[No. 19360. In Bank.—July 25, 1896.]

# W. B. CULLEN ET AL., BOARD OF DIRECTORS OF GLENDORA IRRIGATION DISTRICT, RESPONDENTS, *v.* THE GLENDORA WATER COMPANY, APPELLANT.

IRRIGATION DISTRICTS — PROCEEDING TO CONFIRM — ORGANIZATION AND BONDS—NEW TRIAL—MINUTES OF COURT—BILL OF EXCEPTIONS—CONSTITUTIONAL LAW — SPECIAL LAW REGULATING PRACTICE. — The distinct part of the fourth section of the act of March 16, 1889, supplemental to the "Wright act," which provides that in a proceeding to confirm the organization and bonds of an irrigation district, "a motion for a new trial must be made upon the minutes of the court," is repugnant to the third subdivision of section 25 of article IV of the constitution, which declares that the legislature shall not pass local or special la·/s regulating the practice of courts of justice, and a motion made ï_ ꝑꞓꞥ proceeding upon a bill of exceptions under the Code of Civil Prꝏcedure, is entitled to be considered upon questions of law and fꝓꞓꞥ, where the appeal is taken within the time specified by the act.

ID. — INDEPENDENT PROVISION — GENERAL LAW APPLICABLE TO SPECIAL PROCEEDING.—The unconstitutional provisꞎꝏn regulating the practice as to new trials does not affect the other provisions of the act so far as they constitute a general law applicable to a class of special proceedings distinguished ɪrom all other classes by attributes which reasonably require the peculiarities of practice thereby provided.

ID.—CONSTITUTIONALITY OF PROCEEDINGS FOR CONFIRMATION — JURISDICTION OF SUPERIOR COURT.—The act of 1889 providing a special proceeding for the confirmation of the organization and bonds of irrigation districts, is not unconstitutional for the reason that it authorizes the superior court to hear and determine what will be the rights of parties interested in these bonds, in advance of any controversy as to such rights.

ID. — PROCEEDINGS FOR ORGANIZATION — DESCRIPTION OF PROPOSED DISTRICT—DEFINITE LANDMARKS—ABSENCE OF EVIDENCE.—The proposed irrigation district is sufficiently described in the petition for organization, and in the order calling the election, where the landmarks called for are definite, if there is no evidence that they cannot be found upon the ground.

ID.—INCLUSION AND EXCLUSION OF LAND—DISCRETION OF SUPERVISORS.— The board of supervisors has discretionary power as to the inclusion of parcels of land within the irrigation district, or as to their exclusion therefrom, and the only available objection to it is an abuse of such power or fraud; and in the absence of proof of either, and of any complaint by any person whose land is alleged to have been improperly included or excluded, no tenable objection can be taken to the action of the board in that respect.

ID. — ELECTION OF DIRECTORS AT LARGE — DIVISION OF DISTRICT — CONSTRUCTION OF ACT.—The act providing for the formation of irrigation districts, as amended in 1891, does not contemplate a division of the

district when the election of directors is to be at large, and an order of the board of supervisors declaring one precinct to be a sufficient number for the election, and, as requested by the petition, ordering that five directors be elected by the district at large, is valid and sufficient, without dividing the district into five divisions.

ID.—AGREEMENT WITH WATER COMPANY—VALIDITY—FRAUD IN ORGANI-! ZATION—FINDING.—The validity of an agreement between the appellant water company and persons entering into the organization of the irrigation district, cannot be considered, except as bearing upon the question of fraud in the organization of the district, and where there is no evidence that the organizers of the district executed the agreement in bad faith, merely for the purpose of preventing the water company and its stockholders from opposing the organization, and without intention of performing it on their part, and the court finds to the contrary, the question of fraud in the organization of the district is disposed of by such finding, and all other questions relating to the agreement are irrelevant.

ID.—INCLUSION OF UNPATENTED LAND.—The inclusion of land claimed by a railroad company and its grantee, which has not been patented, assuming it to be public land, does not make the organization of the irrigation district invalid.

ID.—PROCEEDINGS FOR BONDS—ESTIMATE OF MONEY REQUIRED—ADOPTION OF PLANS ESSENTIAL.—Under the Wright act there can be no valid estimate of money required without the adoption of a plan or plans in the alternative for the acquisition and distribution of water, and for the construction of necessary canals and works, and the directors cannot declare that they have estimated the cost when they have no plan or basis for an estimate of cost.

APPEAL from a judgment of the Superior Court of the County of Los Angeles and from an order denying a new trial. WALTER VAN DYKE, Judge.

The facts are stated in the opinion.

*Chapman & Hendrick*, for Appellant.

*C. E. Sumner*, *Joseph H. Call*, and *Anderson & Anderson*, amicus curiæ.

*A. W. Hutton*, and *Charles L. Batcheller*, for Respondents.

BEATTY, C. J.—This cause was formerly heard and decided by the court in Bank, upon grounds stated by Commissioner Vanclief in an opinion rendered herein on the 11th of March, 1895, *post*, p. 510. The case arises

out of a special proceeding under an act supplemental to the Wright act for obtaining a decree of court approving and confirming the regularity of the issue of the bonds of an irrigation district. By the decree of the superior court the proceedings for the formation of the district, and the issuance of the bonds, were held to have been regular, and the bonds were declared valid. By the decision here all the rulings, findings, and conclusions of the superior court were approved, excepting only a finding to the effect that the directors of the irrigation district had made a proper estimate of the cost of works, etc., before ordering the issue of the bonds. This finding was held to be contrary to the uncontradicted evidence in the record, and upon that ground, and none other, the judgment of the superior court, and its order denying a new trial, were reversed. Subsequently a rehearing was granted upon the contention of respondents that there was no issue raised by the answer of appellant as to the fact alleged in the petition for confirmation, that a proper estimate had been made of the cost of works, etc., before the sale of bonds was ordered.

At the rehearing counsel not only discussed the pleadings and evidence relating to this particular question, but counsel for appellant asked the court to consider again the various points which had been ruled against him in our former decision. We have, therefore, again carefully considered the entire case, with the result that we adhere to the views expressed in Commissioner Vanclief's opinion, except in so far as they may be qualified by what we shall have to say with reference to the point upon which the judgment was reversed.

It was alleged in the petition for confirmation: "That as soon after said district was organized as was practicable, to wit, at its meeting of May 10, A. D. 1892, said board of directors of said district did, in order that sufficient water may be furnished to each landowner in said district for irrigation purposes, and for the purpose of constructing necessary irrigating canals and works,

and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of said act under which said district was organized, deem it necessary that the sum of one hundred and seventy thousand ($170,000) dollars should be raised, and said board of directors did thereupon estimate and determine that said amount of one hundred and seventy thousand ($170,000) dollars was and is necessary to be raised for said purposes."

By its answer the appellant denied that " said board of directors of said district did, in order that sufficient water might be furnished to each landowner in said district for irrigation purposes, and for the purpose of constructing necessary irrigating canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of the said act, under which said district was organized, or did otherwise, or at all, estimate or determine that the amount of one hundred and seventy thousand dollars was or is necessary to be raised for said or any purposes."

If the answer had stopped here the allegation that an estimate was made would have been very clearly met, but in the very next paragraph of the answer, the appellant goes on to aver the truth to be " that on the tenth day of May, 1892, the said persons, claiming to be sitting as a board of directors of the Glendora irrigation district, did order that it was necessary that the sum of one hundred and seventy thousand dollars should be raised, in order that sufficient water might be furnished to each landowner in said district for irrigation purposes, and for the purpose of constructing necessary irrigating canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of the act under which the district is organized, to wit, the act approved March 7, 1887, as amended; and did further estimate and determine that one hundred and seventy thousand dollars was necessary to be raised for the said purposes."

This averment would seem to have destroyed the whole effect of the previous denial, but the parties evidently supposed that the pleadings presented an issue on this point, for in stipulating as to the facts of the case, they included the following:

" That as soon after said district was organized as was practicable, and on May 10, 1892, said board of directors of said district made an order calling a special election to be held in said district, at which said election should be submitted to the electors of said district, possessing the qualifications prescribed by said act, the question whether or not the bonds of said district in the amount determined by the board, to wit, one hundred and seventy thousand dollars, should be issued, of which said order the following is a copy:

" On motion duly seconded, the following order was made and adopted by the board of directors of Glendora irrigation district, Los Angeles county, California, to wit:

" Be it ordered that this board being fully advised in the premises, and having duly considered the matter, do now find and order that it is necessary that the sum of one hundred and seventy thousand dollars should be raised in order that sufficient water may be furnished to each landowner in said district for irrigation purposes, and for the purpose of constructing necessary irrigating canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of the act under which this district is organized, to wit, an act of the legislature of the state of California entitled 'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes,' approved March 7, 1887, as amended.

"And said board of directors of said district do now estimate and determine that the following amount of money is necessary to be raised for said purposes, to wit,

the sum of one hundred and seventy thousand dollars ($170,000)."

And the bill of exceptions shows that the cause was submitted in the superior court upon this stipulation.

Considering the ambiguity of the pleadings the court may well be excused for having followed the lead of the parties in treating the question whether a preliminary estimate of cost of works had been made as one of the issues in the case.

But a critical examination of the commissioner's opinion will show that the real question considered and decided by the court was not whether the directors of the district had declared an estimate or resolved that they did estimate, but whether as a legal possibility they could have made the estimate contemplated by the Wright act in the absence of any sort of plan for the construction of works or for the acquisition or distribution of a water supply. And this is the issue which the appellant raised or attempted to raise by its answer. An examination of the whole tenor of the pleadings will show that the appellant intended to admit that the board of directors passed the resolution and took the action disclosed by that part of the stipulation above quoted, but intended to deny the legal sufficiency of such action upon the ground that the board had never "adopted any plan of any canal or canals, storage reservoirs or works, or provided for the acquisition of any property or rights whatever," or made any provision for distributing water among the owners of the land in the district. It was with reference to this question that witnesses were examined in the superior court and findings made, and the exception to the findings was upon the specific ground that the evidence showed "that the board had never formed any plan, or made any plans or specifications for acquiring water or constructing necessary canals and works, or acquiring necessary property and rights therefor; and that the board of directors never have done anything looking to the acquisition of any waters or water rights,

or the construction of any waterworks, or acquiring any property except only the purchase of the Glendora Water Works, and that they have not paid anything for that."

This statement in the exceptions to the findings was, as shown by the commissioner's opinion, very fully and sufficiently borne out by the unconflicting evidence in the record, and the question therefore was and is presented for decision whether there can be, under the Wright act, an estimate of money required, without any plan for the acquisition and distribution of water.

Counsel for respondents contend that this question has already been decided in their favor in the case of *Modesto Irr. Dist.* v. *Tregea*, 88 Cal. 357, where the following language was used by the court: "The authority to issue bonds is wholly independent of the source of supply of water or any plans for obtaining it."

This language was not very happily chosen, and taken in its largest sense for universal application is misleading. But, read with its context and construed with reference to the point under discussion, it is correct. The sole question there considered grew out of this state of facts: The directors, upon a plan to get a supply of water from one source to irrigate the district as originally laid out, had estimated the cost at eight hundred thousand dollars, and ordered that amount of bonds to be issued. Subsequently the size of the district had been reduced, and the plan had been modified with respect to the source of supply and the amount of water to be used, and the directors had modified their order for the issuance of bonds by reducing the amount to four hundred thousand dollars. The question was whether the electors could be held to have ratified this order for the issuance of a smaller amount of bonds, and the decision of the point at issue is really embodied in the language immediately following that above quoted: "There is nothing in the law to prevent the directors from changing their plans in this respect whenever they find it to the advantage of the district to do so."

In other words, we held that the authority to issue bonds is not so bound up with the preliminary plans as to sources of supply upon which the estimate is based that the proceeds of a valid issue of bonds cannot be used to carry out a modified plan if the change is deemed advantageous. But we did not hold, and we think it would lead to very unfortunate consequences if such a construction were placed upon the law, that the board of directors have complied with their duty or acted within their powers by merely resolving that a certain amount of bonds should issue, or by merely declaring that they have estimated the cost when they have no plan or basis for an estimate of cost. We think that the language of the act (Wright act, sec. 15; Stats 1891, p. 147) clearly implies that there must be some plan or plans in the alternative before an estimate can be made, and that without such plan or plans there can be no real estimate.

The judgment and order appealed from are reversed and the cause remanded for a new trial of the issues involving the regularity and validity of the order for the issuance of the bonds of the district. The denial of a new trial as to the issues involving the organization of the district is affirmed.

GAROUTTE, J., McFARLAND, J., VAN FLEET, J., HARRISON, J., and TEMPLE, J., concurred.

The following is the opinion above referred to, prepared by Commissioner Vancliéf and approved by the court in Bank on the 11th of March, 1895:

VANCLIEF, C.—The Glendora irrigation district is composed of a tract of land containing about three thousand acres situate in the county of Los Angeles, and was organized December 21, 1891, by the board of supervisors of that county, in alleged accordance with an act of the legislature, generally known as the Wright act, approved March 7, 1887 (Stats. 1887, p. 29), and amendments thereof. And this is a proceeding by

petition of the board of directors of said irrigation district to the superior court of that county, praying that the organization of said district and all the proceedings by which said board of directors ordered the issuance and sale of bonds of said district for one hundred and seventy thousand dollars may be examined, approved, and confirmed, as authorized by an act "supplemental" to the Wright act, approved March 16, 1889. (Stats. 1889, p. 212.)

The Glendora Water Company (a corporation), being the owner of land in said irrigation district, appeared as a defendant and demurred to the petition on the ground that it does not state facts sufficient to entitle the petitioners to any relief; and especially that it does not state facts sufficient to give the court jurisdiction of the subject matter thereof. The demurrer was overruled and the defendant answered the petition.

The court made written findings of facts, nearly all of which were stipulated by the parties, and thereupon rendered judgment according to the prayer of petitioners, approving and confirming the organization of the district, and the order of the board of directors for the issuance and sale of bonds.

The defendant (Glendora Water Company) appealed from the judgment, and from an order denying its motion for a new trial.

1. The respondent contends that the appeal from the order should be dismissed, or, at least, that the order should be affirmed, on the ground that the notice of motion for new trial does not specify any particular in which the evidence is alleged to be insufficient, nor any particular error in law, as required by section 659 of the Code of Civil Procedure, when the motion is made on the minutes of the court and the ground of the motion is insufficiency of evidence or error in law.

It is true that the only grounds of the motion are insufficiency of evidence and errors in law, and that the notice contains no specification of either. But it does not appear that the motion was made on the minutes of

the court. On the contrary, the notice states "that the motion will be made on a bill of exceptions," and it was so made. In answer to this, however, counsel for respondents contend that the motion for new trial must have been made, if made at all, on the minutes of the court, since section 4, page 213, of the act of 1889, under which this proceeding was taken, imperatively so provides; and, therefore, if not made on the minutes of the court, the motion was wholly unauthorized and void.

On the other hand, counsel for appellant plausibly contends that the provision in section 4 of said act, requiring a motion for new trial to be made on the minutes of the court, is repugnant to the third subdivision of section 25 of article IV of the constitution, which declares that the legislature shall not pass local or special laws "regulating the practice of courts of justice." While section 4 of the supplemental act provides that " the rules of pleading and practice provided by the Code of Civil Procedure, which are not inconsistent with the provisions of this act, are applicable to the special proceeding herein provided for," it further provides that "a motion for a new trial must be made on the minutes of the court." The inevitable effect of this last-mentioned provision is not only to deny the right to move for a new trial either on a statement of the case or on a bill of exceptions, as permitted by the code in all other cases, but also to preclude a motion for new trial on any one of the first four grounds upon which the code allows such motion to be made, namely: 1. Irregularity in the proceedings of the court, jury, or adverse party, or abuse of discretion by which a party was prevented from having a fair trial; 2. Misconduct of the jury; 3. Accident or surprise; 4. Newly discovered evidence; since upon each of these grounds the code (Code Civ. Proc., sec. 658) requires the motion to be made upon affidavits. Conceding, as I do, that the objects and purposes of one class of actions or special proceedings may require a peculiar method of practice differing from those of other classes whose objects or purposes are substantially different, and

also that a classification of methods of practice, appropriately adapted to the objects or purposes of each of the different classes of actions or special proceedings, may be based upon the distinction between the different objects to be attained, so that a law providing a different method of practice adapted to the attainment of the peculiar object of any one of the such different classes of actions or special proceedings would be a general law, yet I am unable to perceive that any lawful or honest object or purpose of the special proceeding under consideration requires, or would be promoted by, any restriction of the grounds upon which a motion for new trial is authorized by the Code of Civil Procedure; or, by requiring such motion to be made only on the minutes of the court, instead of permitting it also to be made on a statement of the case, or on a bill of exceptions, at the option of the moving party, as provided by the Code of Civil Procedure.   On the contrary, it is obviously apparent that the main object of this special proceeding, as expressed in the act authorizing it, may be thwarted and even defeated by restricting the motion for new trial as required by section 4 of said act; since it is plain that either party to a proceeding of this class may be prevented from having a fair trial by irregularity in the proceedings of the court, or adverse party, or abuse of discretion; or by misconduct of a jury in case of trial by jury; or by accident or surprise; and that material evidence may be discovered after the trial which could not, with reasonable diligence, have been discovered and produced at the trial; and also that the motion for new trial may sometimes be more conveniently, more clearly, and more effectively presented by a statement or bill of exceptions than upon the minutes of the court.   It therefore appears that there is no reasonable ground for the distinction between the special mode of moving for new trials provided by section 4 of the act in question, and that provided by the unquestionably general law—the Code of Civil Procedure.   The distinction, as we have seen, suggests no reason why the general mode

provided by the Code of Civil Procedure should not be applied to motions for new trials in this special proceeding for the confirmation of bonds of irrigation districts, but the contrary. It follows, I think, that the distinct part of the fourth section of the act in question, which provides that "a motion for a new trial must be made upon the minutes of the court," is a special law "regulating the practice of courts of justice" in a matter to which an existing general law is appropriately applicable; and is, therefore, repugnant to section 25, article IV, of the constitution. (*Darcy* v. *Mayor of San Jose*, 104 Cal. 642; *Pasadena* v. *Stimson*, 91 Cal. 238; *Dougherty* v. *Austin*, 94 Cal. 601.) But it does not follow from this that any other part of the act may not have the full operation and effect intended by the legislature, since the intended effect of the invalid provision as to new trials is not necessary to the complete operation and effect of all other provisions of the act; which other provisions constitute a general law applicable to a class of special proceedings distinguished from all other classes by attributes which reasonably require all the peculiarities of practice thereby provided, excepting, perhaps, the limitation of the time within which an appeal must be taken to ten days, as to which no question is involved in this case. But the concession that, for most of its purposes, the act is a valid general law, does not help the special provision regulating the practice as to new trials. For the purpose of testing its constitutionality, that special provision must be treated as a distinct law, as it is; and as if it had not been injected into an act whose other provisions are constitutional. So considered, it is seen to apply to only a limited species of special judicial proceedings, for which it provides a mode of moving for new trials materially different from that provided by the Code of Civil Procedure, without any reason or necessity for the difference, arising from any peculiar characteristic of the class of proceedings to which it is applied, nor from any other source. It is, therefore, inappropriate to the class of proceedings to which it is

applied; for, as was said in the case of *Dougherty* v. *Austin, supra,* "a classification permitted for one kind of legislation cannot be made the basis of a different kind of legislation to which it is manifestly inappropriate." Besides, "it destroys the uniform operation of a general law (Code Civ. Proc., sec. 568), and is special in a case where a general law not only can be made applicable, but in which a general law had been enacted, and in which there is no conceivable reason for discrimination." (*Pasadena* v. *Stimson, supra.*) It is further said in the case last cited, "that, although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law." Upon this point see, also, *Darcy* v. *Mayor of San Jose, supra,* and cases there cited. The subject of the law in question is the *mode* of moving for new trials in the superior courts, to which subject the parties to all actions and special proceedings stand in precisely the same relation as do the parties to the small class of special proceedings to which, alone, this law is made applicable, and should equally share the peculiar privileges conferred, or equally suffer the disabilities and burdens imposed by it; since no discrimination in the application of the law is justified by any peculiar characteristic of any object of the law, or of the parties to the special proceeding to which the law is applied.

That part of the act requiring a motion for new trial to be made on the minutes of the court being void, the defendant properly disregarded it, and is entitled to be heard on its appeal from the order denying a new trial, upon questions of both law and fact, the appeal having been taken within two days after the date of the order.

2. Counsel for appellant contend that the act of March 16, 1889, providing for a judicial examination, approval, and confirmation of bonds of irrigation districts, is unconstitutional for the reason that it authorizes a court to hear and determine what will be the rights of parties interested in those bonds, in advance of any controversy as to such rights.

No provision of the constitution is cited to this point, except it is claimed that in all the different species of jurisdiction conferred on superior courts by section 5, article XI, of the constitution, "it is presupposed that somebody is prosecuting somebody else to enforce or protect some right, or to redress or to prevent some wrong." But surely this is not true of actions or special proceedings *in rem*, of which superior courts are expressly given jurisdiction. For example, there can be no such presupposition in proceedings for the probate and confirmation of wills, nor in insolvency proceedings, since they may be, and often are, prosecuted to final and conclusive judgments without any controversy whatever. In all this class of cases, however, the petition or complaint contemplates a controversy, and tenders issues which may be accepted and joined by any person interested who has been actually or constructively served with any kind of lawful process; and so it often happens in actions *in personam* that issues are tendered by pleadings in advance of any actual controversy, and before it is known whether or not any averment in the pleading will be controverted. Besides, the question under consideration has been decided by this court adversely to appellant, at least by implication, in several cases. (*Crall* v. *Poso Irr. Dist.*, 87 Cal. 140; *Modesto Irr. Dist.* v. *Tregea*, 88 Cal. 338; *In re Madera Irr. Dist.*, 92 Cal. 296.) And counsel for appellant concedes that the question was involved in those cases, but claims that the ground of objection here urged by him was not expressly presented to the court in either of those cases. But I think it would have been of no avail if it had been presented.

3. The objections on the grounds that the proposed district was not definitely described in the petition for its organization nor in the order calling the election, and that the latter varies from the former, seem to have been answered by this court in the case of *Central Irr. Dist.* v. *De Lappe,* 79 Cal. 360, and cases last above cited. If the landmarks called for in the petition can be found on the ground, the description is sufficiently definite; and there is no evidence that such landmarks cannot be found. Nor does it appear that the description in the order calling the election varies from or is less definite than that in the petition.

4. It does not appear that the board of supervisors improperly either included in the district, or excluded from it, any parcels of land; and the objections made on these grounds are fully answered in the cases *supra.* What the board did in this respect was within its discretionary power, and the only available objection to it would be abuse of such power, or fraud; of neither of which is there any evidence. (*Central Irr. Dist.* v. *De Lappe, supra; Modesto Irr. Dist.* v. *Tregea, supra; In re Madera Dist., supra.*) Besides, no person whose land is alleged to have been improperly included or excluded has complained.

5. Section 2 of the act for the formation of irrigation districts, as amended (Stats. 1891, p. 143), provides that the board of supervisors shall divide the district "into five divisions, as nearly equal in size as may be practicable, which shall be numbered first, second, third, fourth, and fifth, and one director, who shall be a freeholder in the division and an elector and resident of the district, shall be elected by each division; *provided,* that if a majority of the holders of title . . . . petition for the formation of a district, the board of supervisors may, if so requested in the petition, order that there may be either three or five directors, as said board may order, for such district, and that they may be elected by the district at large."

The third section of the act provides: "For the pur-

poses of the election above provided·for (to determine whether the district shall be organized), the said board of supervisors must establish a convenient number of election precincts in said proposed district, and define the boundaries thereof, which said precincts may thereafter be changed by the board of directors of such district. In any district the board of directors thereof may, upon the presentation of a petition therefor by a majority of the holders of title, . . . . order that on and after the next ensuing general election for the district there shall be either three or five directors, as said board may order, and that they shall be elected by the district at large, or by divisions, as so petitioned and ordered; and after such order such directors shall be so elected."

Under these provisions the board of supervisors declared one precinct to be a convenient number for the election; and, as requested in the petition, ordered that five directors be elected by the district at large; and did not divide the district into five divisions.

Counsel for appellant contend, notwithstanding the board had properly established but one election precinct, and properly ordered that five directors be elected by the district at large, yet the board was bound to divide the district into five divisions, and to elect one director *from* (not "*by*") each division. In this I think counsel mistaken, since the board may order either five or three directors, and, in either case, that they be elected " *by* the district at large"; and, when it does so, there can be no rational object for dividing the district into five divisions, especially if only three directors are to be elected. When the election is by the district at large, neither of the five divisions would be distinctly represented on the board, even though a director should be taken from each division, since a majority of the electors at large might select a director who would not truly represent the division in which he resides, or whose interest might be greater in another division. Besides, a district may be so divided as to enable a majority of the

electors at large to select four-fifths of the directors from the same quarter section of land, while each resides in a distinct division. Had the legislature intended that each director should be taken from a division distinct from all others when elected by the district at large, it could easily have said so, and, in that event, would hardly have failed to provide for a division of the district into *three* divisions when only three directors are to be elected. The statute is not so explicit on this matter as it might be, yet I have no doubt the legislature intended that there should be no division of the district when the election is to be by the district at large.

6. Prior to the filing of the petition of the organization of the irrigation district a written agreement was executed between the defendant (Glendora Water Company) of the first part, and J. P. West and forty-five other natural persons alleged to have been interested in effecting an organization of the Glendora irrigation district, of the second part; which agreement is substantially as follows:

1. Party of first agrees to sell all its property, "consisting of water and water rights, reservoirs, land held to protect water rights and for reservoir sites, tunnels, supply and distributing pipes and tools," to the proposed irrigation district, within ninety days, for the sum of thirty-two thousand three hundred and sixty-two dollars and seventy-one cents, "together with a small amount for railroad lands held by George D. Whitcomb to protect the water interests of the company, said sums being considered sixty per cent of the costs of said property."

2. If the irrigation district is not organized within said time, "then this agreement shall immediately cease upon the expiration of the said ninety days. But if said district shall be organized within the said ninety days, then the said property will be sold to the district, or to the other parties to this agreement for the district within sixty days after the organization is completed.

The said district, if organized, shall include the town of Glendora and the lands included within the bounds of the district as advertised in the petition to the board of supervisors of Los Angeles county."

3. The purchase money to be paid within twelve months from January 1, 1892, with interest at six per cent per annum. Said property to remain in possession of the party of the first part, which is to collect "all water rates and income therefrom, the rates to be approved jointly by the directors of the water (irrigation) district and the Glendora Water Company, until full payment is made for said property, and thereafter until water sufficient for the whole district is put on the lands of the district. But the receipts, after paying running expenses, are to be credited upon the interest account. All sums expended subject to the approval of the board of directors of the water (irrigation) district for necessary repairs and improvements after the date of this contract are to be repaid in full to the party of the first part within said twelve months from January 1, 1892."

4. The parties of the second part are to be personally responsible to the party of the first part for the purchase price of the property and repayment of all other sums as herein provided.

Nothing in the way of performance of this agreement has been done by either party, and it is not made clear by the evidence or findings that either party has ever been ready or willing to perform. Appellant claims, however, that the parties of the second part executed the agreement in bad faith, merely for the purpose of preventing the Glendora Water Company, and its stockholders, from opposing the organization of the irrigation district, and without any intention of performing the agreement on their part; and, therefore, that the organization of the irrigation district was fraudulent. But there is no evidence of the bad faith or fraud charged, and the court found that, while it is true that the parties of the second part, or some of them, claim that they are not bound by the agreement because the

district was not organized with the boundaries adver-
tised in the petition as required by the agreement, and
because of other objections to the agreement, it is not
true that they and the board of directors of the Glen-
dora irrigation district "do not intend to carry out said
agreement." This disposes of the question of fraud in
the organization of the district in favor of respondent;
and all other questions relating to the agreement, dis-
cussed by counsel, are obviously irrelevant.

7. It is claimed by appellant that the district was il-
legally organized, because it contains eighty acres of
railroad land, which has not been patented to the rail-
road company, or to its grantees, although such land
had been sold by the railroad company to *bona fide* pur-
chasers, who were citizens of the United States, before
the district was organized, and appellant claims no in-
terest therein.

It is not necessary to determine what interest or title,
if any, said purchasers had in or to said land. Assum-
ing it to have been public land, its incorporation into
the district did not make the organization invalid. (*In
re Madera Irr. Dist., supra; Modesto Irr. Dist.* v. *Tregea,
supra.*) Whether or not said purchasers were qualified
signers of the original petition for the organization of
the district is a question which does not here arise.

8. Section 15 of the Wright act, as amended (Stats.
1891, p. 147), provides as follows: "For the purpose of
constructing irrigation canals and works, and acquiring
the necessary property and rights therefor, and other-
wise carrying out the provisions of this act, the board
of directors of any such district must, as soon after such
district has been organized as may be practicable, . . . .
estimate and determine the amount of money necessary
to be raised, and shall immediately thereafter call a spe-
cial election, at which shall be submitted to the electors
of such district . . . . the question whether or not the
bonds of said district, in the amount as determined,
shall be issued."

The petition in this case states that the board of di-

rectors did estimate and determine that one hundred and seventy thousand dollars would be necessary for the purposes of constructing necessary irrigation canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of said act.

This allegation was denied by the answer of the defendant; and upon the issue thus joined, the court found in favor of the petitioner.

Appellant contends that this finding is not justified by the evidence; and, as to this point, I think appellant's contention should be sustained. Respondent offered no evidence in chief touching this issue.

The defendant called C. S. Whitcomb, who, upon this issue, testified as follows: "Am acquainted with the water rights and waterworks of the Glendora Water Company. I know the document set out in the stipulation, being an agreement between the Glendora Water company and certain persons resident in the irrigation district, entered into prior to the formation of the district. The water rights and works of the Glendora Water Company are worth the sum mentioned in the agreement. I was one of the board of directors of the Glendora irrigation district when first organized, and continued in that position for one year. It ended in March, 1893. Am acquainted with the record-book of the district." (The book is here shown to the witness, and identified as the record-book containing the minutes of the board of directors of the Glendora irrigation district.)

The witness was then asked to state to the court whether the board of directors of that district ever adopted any plan for the construction of any works, or determined upon what works they would construct, for the purpose of supplying the district with water for irrigation, or made any estimate of the cost of such construction; and, if so, to point out in the minutes of the board of directors where any such plan appeared.

The witness answered: "They did not; and I know of no minutes to the contrary."

And, further testifying, said: "I am acquainted with the waters in the vicinity of this district; there are no live streams of any size within reach of the district; there are what might be called two wet-weather streams —one of them flowing possibly three or four months, and the other flowing probably five months on an average during the year. During the irrigating season all of the springs now used inside of the district would probably flow about twenty inches; that includes the Glendora Water Company's. All of the other springs to which I have referred are the property of private individuals.

" The irrigation district has not made any attempt, or commenced any proceedings, for the purchase or condemnation of those rights; there are no streams of water outside of the district the waters of which can be brought into the district. The stream from which the Glendora Water Company obtains its waters flows at times during the winter a very large stream, but take the average flow for five months, and it would probably be about a hundred inches. After that it runs down to a small stream during the late spring months, and sometimes during the summer months dries up on the surface.

"There is no other plan, to my knowledge, by which any additional water than that owned by the Glendora Water Company and these other springs belonging to private parties could be obtained for that district, other than the construction of storage reservoirs to catch and hold the winter and spring flow. The irrigation district has done nothing in reference to obtaining any water, to my knowledge."

CROSS-EXAMINATION.

"I am not a director of the irrigation district now, nor an officer of the Glendora Water Company. My father is president of the Glendora Water Company. He is now in Chicago.

"I did n't say at Mr. Chapman's office, in the presence of Judge Hutton and Mr. La Fetra, that that storage system would cost about one hundred and twenty or thirty thousand dollars; I said that the buying of the Glendora system and piping of the district, and building storage reservoirs, and completing the whole plan, would cost about one hundred and twenty or one hundred and thirty thousand dollars."

Two other directors of the Glendora irrigation district, namely, M. H. La Fetra and W. B. Cullen, were called by plaintiff in rebuttal, but neither of them disputed any part of the above-stated testimony of Whitcomb as to plans and estimates. Furthermore, their testimony shows that no plans for the work, nor estimate of the cost, had been made up to the time they testified. Nor did they then know from what source they could procure any water, unless they could purchase the water rights and improvements of the defendant, which it is agreed are not sufficient to supply the district; though they intend to get water from other sources if they can.

It must be conceded, I think, that the provisions of both the Wright act and the confirmation act generally facilitate the organization of irrigation districts, and the issuance and confirmation of bonds, and thus afford some excuse if not justification, for the practical construction which seems to have been given them by the promoters of the Glendora district and, perhaps, by other irrigation districts, to the effect that the principal object of those acts is the issuance and confirmation of a liberal supply of bonds; and that a sufficient supply of water for irrigation is chiefly incidental. But the absurdity and injustice of intending such a construction cannot be attributed to the legislature, since it has interposed, at least, one salutary check upon an improvident issue of bonds; namely, that, before calling an election to determine whether or not bonds shall be issued, the board of directors of any such district "*must estimate* and determine the amount of money necessary

to be raised " " for the purpose of constructing irrigation canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of this act." In the case of the Glendora district no such estimate was made before calling the election, nor at any time thereafter. This requirement to estimate the amount of money to be raised for the purposes named implies that the directors must have some of those purposes in view, and, at least, such general knowledge of them as would constitute sufficient data for an approximate estimate of their cost. As the ultimate purpose of the law is to obtain water to irrigate the land of the district, the sources from which such water may be obtained, the kind and length of canals or other conduits through which it may be conveyed to the lands to be irrigated, and the general character and magnitude of other necessary works, must be known before even a proximately correct estimate of their cost can be made. But in this case it appears that none of these things were known to the directors before they called the election, or even at the time of the trial, except that they had in view a purchase of the water rights, canals, and reservoirs of the defendant at a price not exceeding thirty-five thousand dollars, and which the evidence tends to show they may still purchase for that price. The three directors called as witnesses concurred in testifying that they did not know, even at the time of the trial, from what source they could obtain any water, except that of the defendant, and that they had made no arrangement to get water from any other source. Upon what data could they have estimated before the election that one hundred and seventy thousand dollars (fifty-eight dollars per acre on all the land in the district) was the amount necessary to be raised ? It is enough, however, for the purpose of disposing of the point under consideration, that the evidence, without conflict, shows that they made no such estimate, nor any estimate whatever, before they ordered the election.

While I am inclined to the opinion that the statutory requirement that an estimate must be made implies that it must be made by a competent engineer upon such plans or data as that it may be proximately correct, and that it should be recorded in the office of the district, or otherwise made accessible to all parties interested, it is not necessary so to decide in this case.

I think the few checks provided by the statute against the reckless or improvident creation of bond liens of sixty dollars per acre on all the lands in one of these irrigation districts, largely by the votes of electors who own no part of such lands, should be strictly enforced in favor of the owners of such lands. Therefore, for the reason that the board of directors of the Glendora irrigation district made no estimate of the amount necessary for any purpose, I think the order and judgment appealed from should be reversed and the cause remanded.

SEARLS, C., BELCHER, C., and HAYNES, C., concurred.

Rehearing denied.