[S. F. No. 3642.   In Bank.—October 3, 1903.]

FRANK C. DEYOE, Petitioner, v. SUPERIOR COURT OF MENDOCINO COUNTY, Respondent.

DIVORCE — INTERLOCUTORY DECREE — POSTPONEMENT OF FINAL JUDGMENT—CONSTITUTIONAL LAW—REGULATION OF PRACTICE.—The act of the legislature of March 2, 1903, adding sections 131 and 132 to the Civil Code, providing for an interlocutory decree in divorce cases, where the court finds that a divorce should be granted, and postponing the entry of final judgment for one year, though regulating the practice of courts in a special class of cases which is *sui generis,* and in which the state has an interest, is constitutional, and not in violation of subdivision 3 of section 25 of article IV of the constitution, prohibiting local or special laws regulating the practice of courts of justice.

ID.—POWER OF LEGISLATURE TO CLASSIFY.—The legislature, though it may not classify arbitrarily, has the power and right to enact laws applicable only to one class of its citizens, when the classification is authorized by the constitution, or is based on intrinsic differences requiring different legislation; and it may regulate the practice of courts of justice, in various classes of actions or special proceedings,

when made necessary by the nature of the objects and purposes of the various classes regulated.

ID.—DISSOLUTION OF MARRIAGE—INTEREST OF STATE—PROPER CLASSIFICATION.—Cases of divorce in which it is determined that one of the parties has a right to the dissolution of the marriage relation are intrinsically different from those in which a divorce is denied; and since the state has a special interest in the dissolution of the marriage relation, the legislature has the power to regulate the practice of courts of justice in the former class of cases, as to the time and manner of giving interlocutory and final judgment of divorce therein.

ID.—APPLICABILITY OF GENERAL LAWS—UNIFORMITY OF OPERATION.—The classification made being intrinsically proper, the act providing for interlocutory and final judgments in all actions in which the right to a divorce is adjudged is general in its nature, and is therefore not in violation of subdivision 33 of section 25 of article IV of the constitution, which prohibits special legislation in all other cases in which a general law can be made applicable, nor in violation of section 11 of article I of the constitution, providing that all laws of a general nature shall have a uniform operation.

ID.—TITLE OF ACT—PROVISIONS "RELATING TO ACTIONS FOR DIVORCE."—The title of the act being simply to add two new sections to the Civil Code, "relating to actions for divorce," is sufficient to embrace every provision of the act, with possible exceptions, not important or necessary here to decide, which can in no way impair the validity of the remaining provisions, which clearly relate to actions for divorce. It cannot be held that the title does not state the subject of the act with a sufficient degree of particularity.

ID.—ADDITION TO CIVIL CODE—AMENDMENT.—The Civil Code was the appropriate place for the addition of the legislation in question, notwithstanding it relates to procedure. That code has always contained all provisions of law specially applicable to divorces and divorce cases, including special rules relating to procedure therein. The act simply adds two new sections to the Civil Code, and is in no proper sense an amendment to any code; and if it amends any law, it does it only by implication.

ID.—PRESUMPTION IN FAVOR OF VALIDITY—REASONABLE DOUBT.—An act of the legislature should not be declared unconstitutional by the courts unless it is clearly inconsistent with the fundamental law; and where there is a reasonable doubt as to its validity, its constitutionality should be affirmed.

PETITION to the Supreme Court for a Writ of Mandate to the Superior Court of Mendocino County. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Mannon & Mannon, for Petitioner.

The act is unconstitutional, as being special legislation regulating practice in courts of justice (Const., art IV, sec. 25, subd. 3), and in cases where a general law may be made applicable (Const., art. IV, sec. 25, subd. 33), and is repugnant to the provision that general laws must have a uniform operation (Const., art. I, sec. 11), and to the provision that every act "shall embrace but one subject, which shall be expressed in its title." (Const., art. IV, sec. 24.) By our fundamental law we are to disregard those provisions of the act not embraced in the title, and not those provisions of the title exceeded by the act. The act adds two new sections to that part of the Civil Code dealing with "Causes for Denying Divorce," and is not germane to those causes.

H. S. G. McCartney, Camp & Lissner, J. W. McKinley, and William J. Hunsaker as *Amici Curiæ*, for Respondent.

The law of divorce is a distinct branch of the law, in which the public have an interest, and its procedure is anomalous and *sui generis*. (*McBain* v. *McBain*, 77 Cal. 509; *Warner* v. *Warner*, 100 Cal. 11; Nelson on Divorce and Separation, vol. 1, secs. 1, 6, vol. 2, sec. 813; *Estate of Wood*, 137 Cal. 132.) The classification made by the statute is proper, and the law is general in its application to all actions included within the class. The constitutional requirement is met when the act operates uniformly upon the whole of any single class. (*Abeel* v. *Clark*, 84 Cal. 226; *Cody* v. *Murphy*, 89 Cal. 522; *Rode* v. *Siebe*, 119 Cal. 518; *People* v. *Central Pacific R. R. Co.*, 105 Cal. 576; *People* v. *Mullender*, 132 Cal. 221.) The legislature has power to regulate divorces, and to limit or extend the time when the decree shall be made absolute. (*Estate of Wood*, 137 Cal. 132; *Bigelow* v. *Bigelow*, 108 Mass. 38, 40; *Sparhawk* v. *Sparhawk*, 116 Mass. 318.) The title of the act in question is comprehensive enough to include all the provisions in controversy. (Black on Constitutional Law, p. 329, and cases cited; *People* v. *Mullender*, 132 Cal. 219; *Ex parte Liddell*, 93 Cal. 635.)

ANGELLOTTI, J.—Petitioner applied to this court for a writ of mandate, requiring respondent, the superior court of

Mendocino County, to enter a final judgment of divorce in an action pending in said court, in which petitioner is plaintiff, and his wife, Annie I. Deyoe, is defendant. An alternative writ was issued, and the matter submitted for decision upon the petition and argument of counsel.

The action for divorce was instituted by petitioner on April 10, 1903, and the divorce was asked on the ground of desertion. The defendant therein, having been served with summons, as appears from the return of the sheriff of Riverside County, failed to appear, and her default was entered. Testimony was then taken, and on June 22, 1903, the superior court made and caused to be filed its findings of fact and conclusions of law, constituting its decision, whereby it found that all of the allegations of the complaint are true, and that plaintiff, petitioner here, is entitled to a divorce from said defendant. The petitioner asked that final judgment in his favor be thereupon entered, but the court refused to make any order for a final decree, and ordered an interlocutory decree entered. On June 29, 1903, the judge of said court signed, and the clerk entered, the so-called interlocutory decree, whereby it was ordered, adjudged, and decreed "that the said plaintiff, Frank C. Deyoe, is entitled to a divorce from his said wife, the defendant, Annie I. Deyoe." The clerk of the said court has refused, on demand made, to enter any other judgment.

Admittedly, the action of the superior court was in strict accord with the provisions of an act of the legislature of the state, relating to actions for divorce, approved March 2, 1903, (Stats. 1903, p. 75). It is, however, claimed by petitioner that said act of the legislature is unconstitutional; that consequently, the superior court having rendered its decision in favor of petitioner, it is the duty of that court to enter final judgment in accordance with that decision, and that *mandamus* will lie to compel the performance of that duty. The act in question (Stats. 1903, p. 75) is as follows, viz:—

"An act to amend the Civil Code by adding two new sections thereto, to be numbered one hundred and thirty-one and one hundred and thirty-two, to title one, of part one, chapter two, article three, relating to actions for divorce. (Approved March 2, 1903.)

"The people of the state of California, represented in senate and assembly do enact as follows:

"Section 1. The Civil Code of California is hereby amended by adding two new sections to title one, part one, chapter two, article three, to be numbered sections one hundred thirty-one and one hundred thirty-two, to read as follows:

"131. In actions for divorce the court must file its decision and conclusions of law as in other cases, and if it determines that no divorce shall be granted, final judgment must thereupon be entered accordingly. If it determines that the divorce ought to be granted an interlocutory judgment must be entered, declaring that the party in whose favor the court decides is entitled to a divorce, and from such interlocutory judgment an appeal may be taken within six months after its entry, in the same manner and with like effect as if the judgment were final.

"132. When one year has expired after the entry of such interlocutory judgment, the court on motion of either party, or upon its own motion, may enter the final judgment granting the divorce, and such final judgment shall restore them to the *status* of single persons, and permit either to marry after the entry thereof; and such other and further relief as may be necessary to complete disposition of the action, but if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall not be entered until such motion or appeal has been finally disposed of, nor then, if the motion has been granted or judgment reversed. The death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment as hereinbefore provided; but such entry shall not validate any marriage contracted by either party before the entry of such final judgment, nor constitute any defense of any criminal prosecution made against either.

"Sec. 2. All acts or parts of acts in conflict with the provisions of this act are hereby repealed."

Petitioner contends that this act is a special law, regulating the practice of courts of justice, and therefore repugnant to the provisions of subdivision 3 of section 25 of article IV of the constitution. It is there provided that "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say, . . . Regulating the practice of courts of justice."

That the act does attempt to regulate the practice of courts of justice in relation to a special class of cases is undeniable. Ordinarily, a party in whose favor a case has been decided is entitled to have final judgment entered (Code Civ. Proc., secs. 633, 654), while the effect of the act in question is to postpone the entry of final judgment granting a divorce for one year, and if any appeal has been taken from the so-called interlocutory judgment or decision, or motion for new trial made, until the determination of the same. But the mere fact that it operates only on one class of cases does not make it repugnant to the constitutional provision. Our statutes contain many provisions regulating the practice of courts of justice, applicable only to certain classes of actions or special proceedings, made necessary by the nature of the objects and purposes of the various classes. The legislature has the right to enact laws applicable only to one class of its citizens where the classification is authorized by the constitution, or is based upon intrinsic differences requiring different legislation. The law in this regard was well stated by this court, through Mr. Justice Harrison, in *People* v. *Central Pacific R. R. Co.,* 105 Cal. 576, 584, where it was said: "A law which operates only upon a class of individuals is none the less a general law, if the individuals to whom it is applicable constitute a class which requires legislation peculiar to itself in the matter covered by the law. The class, however, must not only be germane to the purpose of the law, but must also be characterized by some substantial qualities or attributes which render such legislation necessary or appropriate for the individual members of the class. It may be 'founded on some natural or intrinsic or constitutional distinction' (*Pasadena* v. *Stimson,* 91 Cal. 251), but the distinction must be of such a nature as to reasonably indicate the *necessity or propriety of legislation restricted to that class.*" (See, also, *Rode* v. *Siebe,* 119 Cal. 518.) The classification must not be arbitrary, for the mere purpose of classification, but must be founded upon some natural or intrinsic or constitutional distinction which will suggest a reason which might rationally be held to justify the diversity in the legislation. (*Pasadena* v. *Stimson,* 91 Cal. 238, 251; *Darcy* v. *Mayor etc.,* 104 Cal. 642.)

If the individuals to whom the legislation is applicable con-

stitute a class characterized by some substantial qualities or attributes of such a character as to indicate the necessity or propriety of certain legislation restricted to that class, such legislation, if applicable to all members of that class, is not violative of our constitutional provisions against special legislation. This we do not understand to be seriously disputed by those who assail the act in question. But it is strenuously urged that there is no such distinction between the class of actions to which this law is made applicable, —i. e. all actions wherein it is determined that a marriage should be dissolved—and other actions as will justify the legislature in prescribing a different rule as to the entry of final judgment from that applicable in ordinary cases. In this contention we cannot concur. In every civilized country marriage is recognized as the most important relation in life, and one in which the state is vitally interested. The right of the legislative department to determine upon what conditions and in what manner the marriage relation may be entered into, and, having been entered into, for what causes and in what manner it may be dissolved, is unquestioned. The well-recognized public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation and illicit unions. (See 1 Nelson on Divorce and Separation, sec. 1.) This policy finds expression in probably every state in this country in legislative enactments designed to prevent the sundering of the marriage ties for slight or trivial causes, or by the agreement of the husband and wife, or in any case, except upon full and satisfactory proof of such facts as have been by the legislature declared to be a cause for divorce. Such provisions find their justification only in this well-recognized interest of the state in the permanency of the marriage relation. While an action to obtain a decree dissolving the relation of husband and wife is nominally an action between two parties, the state, because of its interest in maintaining the same, unless good cause for its dissolution exists, is an interested party. It has been said by eminent writers upon the subject that such an action is really a triangular proceeding, in which the husband and the wife and the state are parties. It was said by this court in *McBlain* v. *McBlain,* 77 Cal. 507,

in reversing the order of the court below refusing to set aside a default: "The courts should be very liberal in granting applications to set aside defaults in divorce cases. . . . The parties to the action are not the only people interested in the result thereof. The public has an interest in the result of every suit for divorce. The policy and the letter of the law concur in guarding against collusion and fraud, and it should be the aim of the court to afford the fullest possible hearing in such matters." (See, also, *Warner* v. *Warner,* 100 Cal. 11, 14; *Hatton* v. *Hatton,* 136 Cal. 353, 356; *Newman* v. *Freitas,* 129 Cal. 283, 289.)

It has long been the law of this state that a divorce shall not be granted upon the default of the defendant, or upon the uncorroborated evidence of the parties (Civ. Code, sec. 130), and that a divorce must not be granted unless the plaintiff has been a resident of the state for one year, and of the county in which the action is brought for three months next preceding the commencement of the action. (Civ. Code, sec. 128.) In discussing this provision of our divorce law, this court said in *Warner* v. *Warner,* 100 Cal. 11: "The state has an interest in the result of such cases. The public welfare demands that the bonds of matrimony should not be lightly set aside, and there is less probability of successful collusion or unfair advantage where the parties have both resided and are known than there is in a county where neither has resided, and which the plaintiff may select solely for the purpose of procuring a divorce." The provisions above referred to and others contained in our Civil Code, applicable only to divorce cases, can, as already stated, be sustained only on the theory of the interest of the state in the maintenance of the marriage relation. We presume that no one would question their validity, even though some of them do regulate the practice of courts of justice in divorce cases.

It is evident that a proceeding to dissolve the marriage relation is, by reason of the interest of the state, intrinsically different from the ordinary action, and that the difference is such as not only to justify, but in many cases to necessitate, special rules of procedure. As has been said, a suit for divorce is *sui generis*. If the action were the ordinary action between two parties who alone were interested in the result, it might

be difficult to give any good reason for a special rule as to the giving of final judgment, or indeed for any of the provisions specially applicable to divorce cases, already referred to. But this interest of the state is sufficient to distinguish it from all other cases, and to make it one concerning which the legislature is authorized to enact such laws of procedure as may rationally be held to protect that interest. It might be contended with much force that an act of the legislature providing for the postponement of the giving of a final decree of divorce for a specified time after the finding that a party was entitled thereto was fully justified by the fact that the parties might be reconciled during such time and a final separation thus obviated. We find in the statutes of some of the states provisions for a decree *nisi* in divorce cases, which decrees are made absolute only after the expiration of a specified number of years, if the parties have continued to live separate and apart. There would seem to be no question as to the right of a legislature to so regulate divorces. (*Bigelow* v. *Bigelow,* 108 Mass. 40.) Again, it might be contended with much force that such legislation was justified, upon the theory that the postponement of the giving of final judgment for a specified time removes to some extent the temptation to resort to collusion or fraud in order to obtain a speedy divorce and contract a new marriage. It is not, however, necessary to base our decision as to the constitutionality of the act in question upon either of these grounds. It is the settled law of this state that the effect of the rendition of a final judgment of divorce is to at once restore the parties to the state of unmarried persons, regardless of the fact that the judgment is appealable, and regardless of the fact that it may be set aside on motion. The divorced person becomes unmarried immediately upon the rendition of the decree, and may at once contract another marriage. (See *Estate of Wood,* 137 Cal. 129, 130, 137, and cases there cited.) The husband or wife so taken by the subsequently contracted marriage would, however, be taken, as said by the chief justice in *Estate of Wood,* 137 Cal. 129, "subject to the contingency of being displaced by the reversal of an appealable and possibly erroneous decree," which appeal might be taken within six months of the entry of the judgment. Within six months from the rendition of the judgment the trial court might re-

lieve the party against whom judgment was rendered from such judgment, on the ground of mistake, inadvertence, surprise, or excusable neglect (Code Civ. Proc., sec. 473), and thus displace the new husband or wife. As is well known, many divorce judgments are procured upon substituted service of summons, and, as was said by Mr. Justice Temple in *Estate of Wood,* 137 Cal. 129, "In such case the court may, and upon a proper showing should, allow the defendant to answer to the merits within one year after the rendition of the decree. (Code Civ. Proc., sec. 473.)" Such permission would vacate the decree and displace the husband or wife taken by the second marriage. As was said by Mr. Justice Temple in the case last cited, "Any civilized people would desire to avoid such possibilities." There can, of course, be no doubt of the right of the legislature to enact such laws as will guard against such possibilities. This was attempted by the legislature by the amendment of February 25, 1897, to section 61 of the Civil Code, whereby it was provided that a subsequent marriage is void from its inception, unless "the former marriage has been annulled or dissolved; provided, that, in case it be dissolved, the decree of divorce must have been rendered and made at least one year prior to such subsequent marriage." This amendment was, however, found to be inadequate, for it was held that it could not affect a marriage solemnized in a foreign jurisdiction, and it was also clear that it would not suspend the effect of the decree pending a decision on an appeal. (*Estate of Wood,* 137 Cal. 129.) The change made by the decree of divorce in the *status* of the parties and the existence of the possibilities already stated distinguish a decree of divorce from every other judgment known to our law, and fully justify the legislature in providing, because of the interest of the state, that no final decree of divorce shall be made until it shall have been finally and irrevocably determined that a divorce should be granted. This, in our judgment, the legislature has done by the act in question. It is urged that if this be the object of the act, it is not accomplished, as an appeal may still be taken from the subsequent final judgment, after the parties have been restored to the state of unmarried persons. There is no merit in this contention. Whether or not all the issues made by the pleadings in a divorce case must be

determined by the "interlocutory judgment," it is not neces-
sary here to decide, but it is clear that the question as to
whether a party is entitled to a divorce must be determined
thereby. An appeal from that determination is given by the
act, and such determination is thereby "taken out of the cate-
gory of orders examinable upon appeal from the final judg-
ment." In this respect, the intermediary judgment occupies,
as to the matters properly embraced therein, the same position
as an interlocutory decree in partition, and is not reviewable
upon the appeal from the final judgment. (Code Civ. Proc.,
sec. 956; *McCortney* v. *Fortune,* 42 Cal. 387; *Regan* v. *Mc-
Mahon,* 43 Cal. 625; *Barham* v. *Hostetter,* 67 Cal. 272; *Barry*
v. *Barry,* 56 Cal. 10; *Gutierrez* v. *Hebbard,* 106 Cal. 167.)

It is further urged that there is no sound reason why the
law should apply only to those actions for divorce in which it
is found that a party is entitled to a divorce. The answer to
this is to be found in what has already been said as to the
peculiar nature and effect of a decree *awarding a divorce.*
The distinction in this regard between such a decree and one
denying a divorce is too obvious to merit discussion.

Much reliance is placed by petitioner upon the decision of
this court in *Cullen* v. *Glendora Water Co.,* 113 Cal. 503,
wherein it was held that a certain provision of an act supple-
mental to the act generally known as the Wright Act (Stats.
1889, p. 212), providing for the judicial examination, ap-
proval, and confirmation of proceedings for the issue and sale
of bonds issued under the provisions of the Wright Act, was in
violation of the provision of the constitution against local or
special laws regulating the practice of courts of justice. The
provision there held violative of that portion of the constitu-
tion was one to the effect that a motion for a new trial could be
made only on the minutes of the court. The effect of this pro-
vision was not only to deny the right to move for a new trial on
a statement of the case or a bill of exceptions, as permitted in
all other cases, but also to preclude a motion for a new trial
on any of four grounds upon which a motion could be made
only on affidavits. It was said by the court that this provided
for a limited species of judicial proceedings, a mode of moving
for a new trial materially different from that provided by
the general law relative to new trials, "*without any reason or*

*necessity for the difference arising from any peculiar charac-
teristic of the class of proceedings to which it is applied, nor
from any other source."* It is possible that a similar provision
applicable to divorce cases would be invalid for the same rea-
son, for it would be difficult to conceive of any reason why a
party to such an action should be restricted in the rights given
other litigants to move for a new trial upon certain grounds
and in a certain manner. But, as we have already attempted
to show, the nature and effect of a decree of divorce are such
as to justify the special method as to the time and manner of
giving final judgment of divorce provided for by this act.
We find nothing in the opinion in *Cullen* v. *Glendora Water
Co.*, 113 Cal. 503, that is contrary to what has been said
herein. Our conclusion is, that the act in question is not vio-
lative of the provision of our constitution prohibiting the
enactment of local or special laws regulating the practice
of courts of justice.

What has been said disposes of the objection that the act is
violative of subdivision 33 of section 25 of article IV, which
prohibits the enactment of a special law, "in all other cases
where a general law can be made applicable," and of the ob-
jection that it interferes with the uniform operation of a gen-
eral law—to wit, section 633 of the Code of Civil Procedure—
providing for the entry of judgment in ordinary cases, and
hence is repugnant to section 11 of article I of the constitution,
which provides that all laws of a general nature shall have a
uniform operation. As was said in *Hellman* v. *Shoulters,* 114
Cal. 136, "It has been uniformly held that a law is general
*which applies to all of a class—the classification being a proper
one."*

It is further claimed that the provisions of the act relative
to the entry of an interlocutory judgment instead of a final
judgment are not embraced within the subject expressed in
the title, and are consequently void under section 24 of
article IV of the constitution, which provides as follows, viz.:
"Every act shall embrace but one subject, which subject shall
be expressed in its title. But if any subject shall be em-
braced in an act which shall not be expressed in its title,
such act shall be void only as to so much thereof as shall
not be expressed in its title." The title of the act, as al-

ready stated, is, "An act to amend the Civil Code by adding two new sections thereto, to be numbered one hundred thirty-one and one hundred thirty-two, to title one, of part one, chapter two, article three, relating to actions for divorce." The statement in the title that the purpose of the act is to "*amend*" the Civil Code may be disregarded, for it further clearly appears in the title that all that is intended thereby is the addition to said code of two new sections "relating to actions for divorce." The title, then, shows that the act is simply one to add two new sections to the Civil Code, to be numbered 131 and 132, "relating to actions for divorce." Such a title is sufficient to embrace every provision of the act, with the possible exception of the provision as to the effect of the final judgment on the *status* of the parties (which subject is fully covered by section 91 of the Civil Code), and the provision that the entry of final judgment shall not validate any marriage contracted by either party before the entry, nor constitute any defense of any criminal proceeding made against either. (See Civ. Code, sec. 61, as amended, Stats. 1903, p. 176.) As to whether or not these provisions can be held to be included in the title of the act in question is not important or necessary to here decide, for the determination of that question can in no way impair the validity of the remaining provisions. All of the other provisions of the act clearly relate to actions for divorce, and are therefore embraced within the subject expressed in the title. The only question that could arise in this connection is as to whether the words "relating to actions for divorce" state the subject with a sufficient degree of particularity. The constitutional provision requiring the subject of an act to be expressed in the title has always been liberally construed, and this court has said that this must be so, because the constitution itself does not define the degree of particularity required, and the matter must therefore be left largely to judicial discretion. It has been said by this court that if the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain (*Ex parte Liddell*, 93 Cal. 633, 638); that it is not required that the title shall disclose the purpose and scope of the act, but it is sufficient if it intelligently refers the reader to the subject to which the act applies, or which is affected by it (*Hellman* v.

*Shoulters,* 114 Cal. 136, 150) ; and that it is not necessary that the title of an act should embrace an abstract or catalogue of its contents. (*People* v. *Linda Vista District,* 128 Cal. 477, 485.) It was said in *Carpenter* v. *Furrey,* 128 Cal. 665, 668, that the subject of an act adding a new section providing for the filing of a bond for the benefit of laborers, materialmen, and subcontractors, and for a penalty in case the bond was not filed as required, was sufficiently expressed in the following title, viz: ''An act to add a new section to the Code of Civil Procedure of the state of California, to be numbered section 1203, relating to liens of mechanics and others.'' Under the construction given our constitutional provision, it cannot be held that the title does not state the subject of the act with a sufficient degree of particularity.

Some reliance seems to be placed by petitioner upon the fact that this act, relating almost entirely to procedure in divorce cases, has been placed in the Civil Code instead of the Code of Civil Procedure. We cannot see how this in any way affects the validity of the act. As was said in *Lewis* v. *Dunne,* 134 Cal. 291,[1] ''Nearly all of our general laws are arranged for convenience, under four main headings, to wit: the Civil Code, the Code of Civil Procedure, the Penal Code, and the Political Code,—but no one of these four codes is complete in itself; legislation under either code is inseparably interwoven with legislation under the others; *and legislation upon any imaginable subject would not be held invalid because found in any particular code.*'' (See, also, *Enos* v. *Snyder,* 131 Cal. 68.[2])

The Civil Code was, however, the appropriate place for the legislation in question, notwithstanding such legislation relates to procedure, for that code has always contained all provisions of law specially applicable to divorces and divorce cases, including such special rules relating to procedure therein as have from time to time been deemed essential by the legislature.

It is urged that instead of amending the Civil Code, as stated in the title, the act in fact amends three separate codes,—the Code of Civil Procedure, the Civil Code, and the Penal Code. As already intimated, the act, as shown by the

[1] 86 Am. St. Rep. 257, and note.        [2] 82 Am. St. Rep. 330.

title, was not an act to "amend" any code, but was simply an act to add two new sections to the Civil Code, "relating to actions for divorce." If it amends any law, it does so only by implication, and is in no proper sense of the word an amendment. (See *Hellman* v. *Shoulters,* 114 Cal. 136, 151.)

An act of the legislature should not be declared unconstitutional by the courts unless it is clearly apparent that the act is violative of some provision of the constitution. Where there is a reasonable doubt as to the validity of the act, its constitutionality should be affirmed. "A just deference for the legislative department enjoins upon the courts the duty to respect its will, unless the act declaring it be clearly inconsistent with the fundamental law, which all members of the several departments of the government are sworn to obey." (*People* v. *Judge of Twelfth District,* 17 Cal. 547.) We see no constitutional objection to the act in question.

The application for a peremptory writ of mandate is therefore denied and the proceeding dismissed.

Van Dyke, J., Beatty, C. J., Lorigan, J., Shaw, J., McFarland, J., and Henshaw, J., concurred.

Rehearing denied.