[No. 20887.   In Bank.— March 19, 1892.]

# Ex parte JOHN LIDDELL, on Habeas Corpus.

Constitutional Law — Title of Act — State Reform School. — The act of the legislature entitled "An act to establish a state reform school for juvenile offenders, and to make an appropriation therefor," and providing, among other things, that any boy or girl between the ages of ten and sixteen years, who has been convicted of an offense punishable by imprisonment in the county jail or penitentiary, may be committed to such school, does not contain any subject-matter not expressed in the title, and is constitutional and valid.

Id. — Object of Constitutional Provision as to Title of Acts — Prevention of Fraud. — The object of the constitutional provision requiring that "every act shall embrace but one subject, which subject shall be expressed in its title," is to prevent legislative abuse, or the passage of acts bearing deceitful and misleading titles, or titles which give no intimation to the members of the legislature or to the people of the matters contained therein, and to protect the members of the legislature, as well as the public, against fraud.

Id. — Mandatory Provision. — Though a similar provision in the constitution of 1863 was held merely directory, the provisions of the constitution of 1879 are made mandatory and prohibitory, unless by express words they are declared to be otherwise.

Id. — Construction of Constitution — Judicial Interpretation of Similar Provisions. — Where a provision of the constitution has been enacted after similar provisions in the constitutions of other states have received judicial interpretation, it will be presumed that the language of the enactment was used with reference to the interpretation put upon similar provisions by the courts of the other states.

Id. — Reasonable Intimation of Contents of Act — General Terms of Title — Custom. — It is not necessary for the title of an act to embrace an abstract of its contents; but if it contains a reasonable intimation of the matters under legislative consideration, it is sufficient to state the subject of the bill in general terms and with the fewest words, in accordance with general custom, to which the framers of the constitution intended the legislature to conform.

Id. — Provisions of Act under General Title. — Numerous provisions having one general object fairly indicated by the title may be united; and when the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents.

Id. — Liberal Construction — Particularity of Title — Legislative Discretion. — Section 24 of article IV. of the constitution, though it should be construed so as to prevent mischievous and vicious legislation, should be given a liberal construction; and as the constitution does not define the degree of particularity with which a title shall specify the subject of a bill, the matter must be left largely to legislative discretion.

Reform School Act — Private or Public Trial — Validity of Judgment — Appeal — Habeas Corpus. — Under section 19 of the act relat-

ing to the state reform school, and giving to a person accused the right to a private examination on the question whether he ought to be committed to the school, unless his parents demand a public trial, a judgment is not rendered void because of a failure to give a defendant a private examination or a public trial, but such a failure is a mere error, which can be corrected on appeal, and cannot be reviewed upon application for a discharge upon *habeas corpus.*

Id. — Petition for Habeas Corpus — Judgment Disclosing a Hearing — Conclusive Adjudication. — Where a defendant, sentenced to the state reform school, alleged in his petition to the supreme court for a writ of *habeas corpus* that he did not demand a public trial, nor waive a private examination, but did not allege that he demanded a private examination, and it appeared upon the face of the judgment of the trial court that the court heard testimony after the defendant had entered his plea of guilty, and found that the defendant was a suitable person to be committed to the school, the adjudication is conclusive in the *habeas corpus* proceeding.

Id. — Penal Legislation — Conflict with Penal Code. — Although section 16 of the state reform school act could have been enacted as an amendment to the Penal Code, yet the fact that it was not so made a part thereof does not render that section void; and if there be any conflict between the Penal Code and the reform school act the latter must prevail.

Id. — Term of Detention — Unequal Penalties — Object of Reform School Act. — The fact that the term of detention at the reform school may be made greater by the judgment of the court than the term of imprisonment in the county jail or in the state prison would be for the same offense does not render the act unconstitutional, as prescribing unjust or unequal penalties, the object of the act being, not punishment, but reformation, discipline, and education.

Application to the Supreme Court for a discharge upon a writ of *habeas corpus.* The facts are stated in the opinion of the court.

*M. W. Conkling,* for Appellant.

*Attorney-General Hart,* for Respondent.

Paterson, J. — The petitioner, a boy fifteen years of age, was charged in the justice's court of Los Angeles city township with the crime of petit larceny, and upon being arraigned, entered a plea of guilty as charged. Thereupon the court sentenced him to serve a term of one year in the Whittier Reform School.

It is claimed that the judgment is void, — 1. Because the act upon which it is based is unconstitutional, the

legislature having failed to express the subject of the act in the title thereof; and 2. Because petitioner was not given a private examination on the question as to whether he ought to be committed to the reform school.

Section 24, article IV., of the constitution provides that " every act shall embrace but one subject, which subject shall be expressed in its title." The act in question is entitled " An act to establish a state reform school for juvenile offenders, and to make an appropriation therefor." Section 16 provides that any boy or girl between the ages of ten and sixteen years, who has been convicted of an offense punishable by imprisonment in the county jail or penitentiary, may be committed to the state reform school for a term not less than one nor more than five years; provided, however, that if the crime be one punishable by imprisonment in the county jail, the court may, in its discretion, commit the offender to the county jail for the time authorized by law for the punishment of the offense.

1. It is not claimed that the act embraces more than one subject, but it is contended that the title of the act does not fully express the subject-matter.

If we bear in mind the part which the titles of acts have played in the history of legislation, it will not be difficult to understand the purpose of the constitutional inhibition and mandate quoted above. In olden times legislative titles were unknown; bills were drawn in the form of petitions, which were entered upon the Parliament rolls. At the end of each Parliament, the judges put them in the form of a statute, and in that form they were entered on the statute rolls. It was not until the reign of Henry VI. that bills in the form of acts according to modern customs were first introduced. When *titles* were first introduced, there was a general one for all the acts passed in the session, but in the first year of Henry VIII. distinct titles were introduced for each chapter. Until a comparatively recent date, the title of an act in this country was regarded as no part of it; but if the language of the act was ambiguous, the title might be con-

sidered in determining the intent of the legislators. At
the present time, however, the constitutions of many
states contain provisions similar to that quoted above.
The object of the provision is to prevent legislative
abuse, — to prevent the passage of acts bearing deceitful
and misleading titles. It is intended to protect the mem-
bers of the legislature, as well as the public, against
fraud; to guard against the passage of bills the titles of
which give no intimation to the members of the legisla-
ture or to the people of the matters contained therein.
(Cooley's Constitutional Limitations, 6th ed., 169.) At
the time the provision referred to was incorporated into
our constitution, similar language in the constitutions
of other states had received judicial interpretation. If
there were any discordance of judgment as to the mean-
ing of the language, we might be justified in discussing
the matter as an original proposition, but as the courts
have been practically unanimous in their views, it would
be idle to go beyond the mere statement of what we un-
derstand to be the consensus of judicial opinion at the
time the provision referred to was adopted in this state,
for the legal presumption arises that the language was
used with reference to the interpretation put upon it by
the courts in other states. There was a similar provis-
ion in the constitution of 1863, and it was held here that
it was merely directory, and did not nullify laws passed
in violation of it, but the provisions of the constitution
of 1879 "are mandatory and prohibitory, unless by ex-
press words they are declared to be otherwise."

In *Abeel* v. *Clark*, 84 Cal. 229, we held it was not
necessary that the title of the act should embrace an ab-
stract of its contents. The cases cited therein show that
such is the view taken by the courts of other states; and
on reflection, it must appear that this conclusion is based
upon the soundest principles of constitutional construc-
tion. It certainly was not intended that the title should
be a repetition of the provisions found in the body of
the bill; the object was to prevent deception by the in-
clusion of matters incongruous with the subject specified

in the title. If the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain. It has always been the custom to state the subject of a bill in general terms and with the fewest words, and the framers of the constitution doubtless intended the legislature to conform to that custom. (*Mills* v. *Carleton*, 30 Wis. 409; *Bright* v. *McCullough*, 27 Ind. 226; *People* v. *Mahaney*, 13 Mich. 494.) Numerous provisions having one general object fairly indicated by the title may be united. (*Montclair* v. *Ramsdell*, 107 U. S. 147.) When the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents. So an act to incorporate a fireman's benevolent association may include provisions for levying a tax upon the income of a foreign insurance company for the benefit of the corporation (*Fireman's Benevolent Ass'n* v. *Lounsbury*, 21 Ill. 511; 74 Am. Dec. 115); and it is held in many cases that an act entitled in general terms an act to incorporate a certain town may lawfully provide all means necessary for the government of the town, including taxation, courts, definition of misdemeanors, punishment of offenders, municipal improvements, etc. (*State* v. *Town of Union*, 33 N. J. L. 350; Cooley's Constitutional Limitations, 172, note 1.)

In applying these principles to the case before us, we find no ground for declaring the act unconstitutional. The title declares the act to be one for the establishment of a state reform school for juvenile offenders, and to make an appropriation therefor. It is not an act to erect a building in which a reform school is to be hereafter conducted, but it is an act to establish a *school*. There can be no school without pupils. It is not simply an act to establish a school, but a school for *juvenile offenders*. This is a clear indication of an intention to provide for an *institution* for a certain class of *criminals*, — children who have offended against the laws of the state. No one can be condemned without a hearing. The title of the act necessarily implies, therefore, that

some officer or tribunal shall hear and determine the question whether certain persons charged with crime shall be committed to a reform school, or treated as ordinary juvenile offenders are treated under the penal laws of the state. Any person of ordinary intelligence, reading the title of the act in question, would naturally be led to the inquiry, What juvenile offenders may be sent to this school? under what circumstances may they be committed to this institution? and who is to determine whether or not they should be sent there?

The title of the act clearly shows what the legislature intended to accomplish, and the provisions referred to simply conduce to that object; they are auxiliary to and promotive of the main purpose of the act, and have a "necessary and natural connection" therewith. They are germane to the subject stated in the title of the act; there is no attempt to conceal the purpose or scope of the act, and no attempt in the act itself to blend diverse and independent subjects.

It is admitted that the constitutional provision under consideration has always been given a liberal construction; and this must be so, because the constitution itself does not define the degree of particularity with which a title shall specify the subject of a bill. The matter must therefore be left largely to legislative discretion. (*Mills* v. *Carleton*, 30 Wis. 409; *Hannibal* v. *Marion Co.*, 69 Mo. 576; *State* v. *Ranson*, 73 Mo. 86; *People* v. *Parks*, 58 Cal. 635; *San Francisco etc. R. R. Co.* v. *State Board*, 60 Cal. 12.)

While it is the duty of the court to place such a construction upon this constitutional provision as will prevent mischievous and vicious legislation, we should guard against such a rigorous interpretation of the language as will impale upon its sharp points the good with the bad.

The cases cited by the petitioner do not support his contention. The Colorado case, upon which he places his chief reliance, is clearly distinguishable from the case before us. The title of the act under consideration

in that case stated that it was an act "to provide for the maintenance, government, and police of the penitentiary, also the mode of appointing officers, and fixing the salary of the same, and to repeal several acts relating thereto," while the act itself made "certain offenses felonies, punishable by confinement in the penitentiary, that otherwise would be considered and punished as misdemeanors." The court properly held that the act dealt with a subject not expressed in the title. At the time of the passage of the act, the penitentiary was in existence, and a reading of the title at once induces the conclusion that the various provisions of the act relate alone to the preservation of the building, management of the institution, and the pay of the officers. (*Brooks* v. *People*, 14 Col. 413.)

2. Section 19 of the act gives to the person accused the right to a private examination on the question whether he ought to be committed to the reform school, unless his parent demands a public trial. The matters to be inquired into are collateral to the main issue of guilt or innocence. Either before or after conviction the court may inquire as to the habits and disposition of the defendant, and determine whether he is a fit person to be committed to the school. The inquiry can be made before conviction only with the consent of the accused (Stats. 1889, p. 116, sec. 18); but after conviction it is the duty of the court to hear testimony upon the question. (Stats. 1889, p. 116.) It does not follow, however, that a failure to give the defendant a private examination or public trial will render the judgment void. It is mere error, which can be corrected on appeal. The petitioner alleges that he did not demand a public trial, and did not waive a private examination; but it is not alleged that he demanded a private examination. It appears upon the face of the judgment, however, that the court did hear testimony after the defendant had entered his plea of guilty, and found that the petitioner was "a suitable person to be committed to the instruction and discipline of the reform school for juvenile

offenders at Whittier," and this adjudication is conclusive so far as this proceeding is concerned.

3. We think there is no merit in the contention that section 16 is void because not made a part of the Penal Code. It is true, it could have been enacted as an amendment to the code, and perhaps it would have been more consistent with our system of codification if it had been, but we know of no provision which requires penal statutes to be made a part of the code.

4. Counsel for petitioner cites section 1388 of the Penal Code, but it does not clearly appear for what purpose it is cited. If there be any conflict between that section and the act under consideration, the latter must prevail. There can be no question as to the power of the legislature to provide for the detention and education of juvenile offenders, as it has done in this act; and the provisions of the act are not obnoxious to the criticism that it prescribes unjust or unequal penalties. It is true, the term of detention at the reform school may be made greater by the judgment of the court than the term of imprisonment in the county jail or in the state prison for the same offense would be; but it cannot be said that the punishment inflicted is greater than could be put upon an adult for the same offense. The object of the act is, not punishment, but reformation, discipline, and education. (Pen. Code, sec. 12.) While detained for a longer period, perhaps, than he would be if sent to state prison or the county jail, the conditions surrounding the child are vastly different. He is given the opportunity and instruction to learn a trade, and qualify himself for the duties of citizenship, so that at the end of his term he will go out prepared to take care of himself, and those dependent upon him, without the odium which attaches to an ex-convict. There is no doubt of the power of the state to make and enforce provisions for the compulsory education of all children within the state; and it is equally clear that the state may arrest the downward tendency of those who have offended against its laws, and manifested a disposition to follow a criminal

career, by placing them in an institution where they will receive the care, education, and discipline necessary to prepare them for honorable citizenship. The records of the penal institutions of this state show that a large majority of their inmates are young men, — many of them juveniles. The legislature, in its wisdom, has endeavored to provide a place for children manifesting criminal traits, where they can be cared for without being thrown under the baneful influence of veterans in crime. We think the policy of the act a wise one, and we see no constitutional grounds for declaring it invalid.

It is ordered, therefore, that the writ be discharged, and that the petitioner be remanded to the custody of the officers of the reform school.

DE HAVEN, J., BEATTY, C. J., McFARLAND, J., HARRISON, J., SHARPSTEIN, J., and GAROUTTE, J., concurred.