[Crim. No. 1701. In Bank.—February 6, 1912.]

## In the Matter of MABEL MAGINNIS, sometimes called Mabel Hand, on Habeas Corpus.

JUVENILE COURT LAW—TITLE OF STATUTE—CONSTITUTIONAL LAW.—The "Juvenile Court Law" of 1909 (Stats. 1909, p. 213), is not invalid as being in conflict with section 24 of article IV, of the constitution, providing that "every act shall embrace but one subject, which subject shall be expressed in its title."

ID.—SCOPE OF ACT INDICATED BY TITLE.—The general scope of that act is fairly indicated by its title, reading as follows: "An act concerning dependent and delinquent minor children, providing for their care, custody and maintenance; providing for their commitment to the Whittier State School and the Preston State School of Industry, and the manner of such commitment and release therefrom; establishing a probation committee and probation officers to deal with such children, and fixing the salaries of probation officers; providing for detention homes for such children; providing for the punishment of persons responsible for, or contributing to the dependency or delinquency of children; and giving to the superior court jurisdiction of such offenses, and repealing inconsistent acts." If there are any provisions of that act not covered by its title, their invalidity would not affect the validity of the law as a whole.

ID.—OBJECT OF CONSTITUTIONAL REQUIREMENT—CONSTRUCTION.—The constitutional requirement that acts should contain but a single subject, which should be expressed in the title, was intended to guard against the inclusion in a single or general act of various disconnected provisions. Such requirement should receive a reasonable and not a narrow construction; and does not prohibit the inclusion, in a single act, of a number of specific provisions, all designed to aid in the accomplishment of a single purpose.

ID.—OBJECT OF ACT — APPROPRIATENESS OF METHODS.—The principal object of that act is to provide for the proper custody and education of children who lack the care and control deemed essential to their right development, whether or not their situation be such as to be likely to lead them to actual crime, and its secondary purpose is to provide for the punishment of persons responsible for, or contributing to, the dependency or delinquency of children. The methods provided by the act are appropriate for the accomplishment of such purposes.

ID.—PUNISHMENT OF OFFENSE—JURISDICTION OF SUPERIOR COURT.—The offense of contributing to or causing delinquency or dependency being created by the act, it was proper, in the same enactment, to confer jurisdiction on the superior court for its punishment.

ID.—REPEAL OF OTHER STATUTES GERMANE TO ACT.—The repeal of other statutes dealing with the same subject is germane to the purpose of any act.

ID.—JURISDICTION OF JUVENILE COURT — RESIDENCE OF DEPENDENT CHILD—REVIEW ON HABEAS CORPUS.—Where the petition filed in the juvenile court avers that the minor whom it was sought to have declared a dependent child was a resident of the state of California, and the court, in its order of commitment finds, as a fact, that such allegation is true, its determination, however erroneous, was within its jurisdiction, and cannot be reviewed on *habeas corpus*.

ID.—JURISDICTION OVER NON-RESIDENT CHILD.—Whether the juvenile court has jurisdiction of a minor child who was present in the state, but who did not have a technical residence therein, is not decided.

APPLICATION for a writ of Habeas Corpus directed to the Children's Agency and to Katherine Felton, President and Manager thereof.

The facts are stated in the opinion of the court.

Henry B. Lister, for Petitioner.

Thomas E. Hayden, W. T. Kearney, and T. J. Crowley, for Respondent.

SLOSS, J.—A writ of *habeas corpus* was issued by this court on the petition of Marie Maginnis, who alleged that Mabel Maginnis, a minor child, was unlawfully restrained of her liberty by the Children's Agency.

By the return to the writ it appeared that under proceedings instituted by one Fairweather, the child, aged ten years, had been brought before the superior court of the city and county of San Francisco, sitting as a juvenile court, and that after a hearing an order had been made finding that Mabel Maginnis was a dependent child, and committing her to the care of the Children's Agency until the further order of the court. The petitioner had had the custody of the child prior to the proceedings above referred to. The Children's Agency is a branch or department of the Associated Charities of San Francisco, a corporation, and has for its purpose, among other things, the caring for and obtaining homes for dependent or neglected children. The petition for the writ avers that the mother of the child resides in the state of Montana, and that the child herself is a resident of that state.

The proceedings for the commitment of the child were taken under the provisions of the "Juvenile Court Law" of 1909 (Stats. 1909, p. 213)'. The regularity of the procedure leading up to such commitment is not questioned, the petitioner's sole contentions being: 1. That the Juvenile Court Law is invalid as being in conflict with section 24 of article IV of the constitution, providing that "Every act shall embrace but one subject, which subject shall be expressed in its title"; and, 2. That the superior court had no jurisdiction of the child by reason of the fact that the residence of the child's mother, and of the child itself, was in another state.

1. The title of the act in question reads as follows: · "An act concerning dependent and delinquent minor children, providing for their care, custody and maintenance; providing for their commitment to the Whittier State School and the Preston State School of Industry, and the manner of such commitment and release therefrom; establishing a probation committee and probation officers to deal with such children, and fixing the salaries of probation officers; providing for detention homes for such children; providing for the punishment of persons responsible for, or contributing to the dependency or delinquency of children; and giving to the superior court jurisdiction of such offenses, and repealing inconsistent acts."

The general scope of the act is fairly indicated by the foregoing title. Whether or not it contains provisions not covered by the title is a question which does not now concern us, as the invalidity of such provisions would not affect the validity of the law as a whole. (*Deyoe* v. *Superior Court*, 140 Cal. 476, 488, [98 Am. St. Rep. 73, 74 Pac. 28].) The act defines dependent and delinquent children, confers jurisdiction of the matters covered by the act upon the superior court, which is, for this purpose, designated the "juvenile court," defines the procedure for bringing dependent or delinquent children under the jurisdiction of the court, and provides for the commitment of such children, during minority or for a shorter period, to the care of some reputable citizen or child-caring organization, or to the Preston or the Whittier State School. It authorizes the appointment of a probation committee, and of probation officers, to assist the court in the performance of its functions and the execution of its orders,

and transfers to the juvenile court a certain jurisdiction over charges of crime against persons under the age of eighteen years, and over felony charges against persons between the ages of eighteen and twenty years. It further makes it a misdemeanor for any parent or other person having the custody of a dependent or delinquent child to encourage, cause, or contribute to such dependency or delinquency. Certain earlier acts dealing with matters covered by the act in question are repealed.

The petitioner finds in this act and in its title four distinct subjects, which she enumerates as follows:—

First, the act "makes provision for a certain state charity to provide homes for the care, custody and maintenance of dependent and delinquent minor children."

Second, it "provides for the punishment of persons responsible for or contributing to the dependency or delinquency of children."

Third, "it confers jurisdiction on the superior court of such offenses, which the act declares to be misdemeanors."

Fourth, "the act repeals inconsistent acts."

The constitutional provisions with respect to the titles of acts were designed, mainly, "to prevent legislators and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title to another." (*Abeel* v. *Clark*, 84 Cal. 226, [24 Pac. 383].) The particular requirement that acts should contain but a single subject, which should be expressed in the title, was, no doubt, intended to guard against the inclusion in a single or general act of various disconnected provisions—a practice which might well prevent the consideration upon its own merits of legislation on each of the various subjects embraced in the bill. Thus, the constitution of New Jersey prefixes to a similar provision a recital that its purpose is "to avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other." (See Cooley on Constitutional Limitations, 7th ed., p. 203.) All of these limitations are to receive "a reasonable, and not a narrow construction." (*Abeel* v. *Clark*, 84 Cal. 226, [24 Pac. 383]; *Ex parte Liddell*, 93 Cal. 633, [29 Pac. 251].)

The requirement that an act shall not contain more than one

subject does not mean that a number of specific provisions, all designed to aid in the accomplishment of a single purpose, may not be united in one act. "The general purpose of these provisions," says Cooley (Const. Lim., 7th ed., p. 205), "is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible." The same view has been expressed by this court. In *Ex parte Kohler,* 74 Cal. 38, 41, [15 Pac. 436], it was said: "However numerous the provisions of an act may be, if they can be fairly considered as falling within the subject-matter of legislation, or as proper methods for the attainment of the end sought by the act, there is no conflict with the constitutional provision. . . ." And constitutional provisions like the one under consideration have universally been construed in accordance with the expressions just quoted. (See cases cited in Cooley on Constitutional Limitations, 7th ed., p. 203.)

The question, then, is whether the various matters covered by the act and indicated by its title are cognate to the main or general purpose of the legislation. "The main purpose of the act," as was said by this court in *Nicholl* v. *Koster,* 157 Cal. 416, [108 Pac. 302], "is to provide for the care and custody of children who have shown, or who from lack of care are likely to develop, criminal tendencies, in order to have them trained to good habits and correct principles." The statement might perhaps be broadened to the extent of saying that the act aims, as its principal object, at the proper custody and education of children who lack the care and control deemed essential to their right development, whether or not their situation be such as to be likely to lead them to actual crime. This is the purpose declared by the opening words of the title, viz., "an act concerning dependent and delinquent minor children, providing for their care, custody and maintenance." That the other "purposes" pointed out by petitioner are mere adjuncts to this main end—means to facilitate its proper accomplishment—seems to us perfectly clear. The second purpose, as above stated, is to provide for "the punishment of persons responsible for, or contributing to, the

dependency or delinquency of children." It needs no argument to show that the existence of dependent or delinquent children is detrimental to the best interests of the community. Ultimately, of course, the act seeks to prevent such dependency or delinquency. One method of doing this is to take the child out of the custody of the person who has caused or permitted it to become dependent or delinquent. Another is to punish the person who is responsible for the condition which is sought to be cured. Both methods are directly related to the final purpose of protecting the growing generation from conditions detrimental to its welfare.

What we have just said sufficiently answers the point that a third separate subject is the granting to the superior court of jurisdiction over the offense of contributing to or causing delinquency or dependency. If the offense is created by the statute, it is certainly proper, in the same enactment, to confer jurisdiction to punish the offense.

Finally, the point that the repeal of inconsistent statutes forms a separate subject of legislation is obviously without merit. The enactment of a law works a repeal, by implication, of all existing statutes plainly inconsistent with it. If this be so, there can be no objection to a declaration, in the law, that it shall have the effect which it would have in the absence of such declaration. But in any view, a repeal of other statutes dealing with the same subject is clearly germane to the purpose of any act. (Cooley on Constitutional Limitations, 7th ed., p. 208.)

2. Petitioner's second point is that the juvenile court had no jurisdiction over the child, because said child was a resident of the state of Montana. The statute does not limit the power of the court to children who have a technical residence in this state. By section 3 the action of the court is invoked by the filing of a petition "showing that there is within the county, or residing within the county," a dependent or delinquent child. It is claimed, however, that, regardless of the declaration of the statute, the principles of international law prohibit the courts of one state from assuming guardianship of children who may happen to be within the jurisdiction, but whose legal residence or domicile is elsewhere. The decisions in this court, so far as they go, are to the contrary. In *De la Montanya* v. *De la Montanya*, 112 Cal.

131, [44 Pac. 354], Temple, J., delivering the opinion of the court, says: "I do not doubt that the mere presence of infants within the jurisdiction is sufficient to confer jurisdiction, although they may be residents of another state."

But it is not necessary, in the case at bar, to go into this question. The petition of Fairweather, initiating the proceedings in the juvenile court, alleges that the minor is residing in the city and county of San Francisco, and the order commiting the child to the custody of the Children's Agency finds, as a fact, that this allegation is true. The petition, therefore, presented to the juvenile court a case which, under any view, was within its jurisdiction, and the court had power to decide whether the averments of jurisdictional facts were true. Its decision on the facts, however erroneous, cannot be reviewed on *habeas corpus.* The sufficiency of the evidence to sustain the finding "is a matter into which we cannot inquire upon this writ. Under the writ, the court can only inquire into the jurisdiction to find, not into the correctness of the findings . . ." *Ex parte Spencer,* 83 Cal. 460, [17 Am. St. Rep. 266, 23 Pac. 395]; *Ex parte Williams,* 87 Cal. 78, [24 Pac. 602, 25 Pac. 248].)

The writ is dismissed, and the minor remanded to the custody of the Children's Agency, pursuant to the order of commitment of the juvenile court.

Angellotti, J., Shaw, J., Lorigan, J., and Henshaw, J., concurred.