[Civ. No. 1021. Third Appellate District.—September 5, 1912.]

Mrs. J. H. MOORE, Petitioner, v. L. P. WILLIAMS, as County Auditor in and for the County of Sacramento, etc., Respondent.

"JUVENILE COURT LAW" OF 1911—CONSTITUTIONALITY—TITLE AND SUBJECT MATTER.—The "juvenile court law" of 1911, entitled "An act concerning dependent and delinquent minor children, providing for their care, custody and maintenance until twenty-one years of age," is not unconstitutional because section 1 of that act provides that the act "shall apply only to persons under the age of twenty-one years," notwithstanding the reference in the title to "dependent and delinquent minor children."

ID.—DISTINCTIONS BETWEEN ACT OF 1909 AND ACT OF 1911—AIM AND PURPOSE OF EACH ACT.—The prior act of 1909 is distinguished from

the act of 1911, in that such former act was limited to children "under the age of eighteen years," while the later act, besides increasing the age limit, provides for additional probation officers, and adjusts the salaries of such officers by counties. The aim and purpose of each act are substantially the same, to provide for the care and custody of dependent and delinquent children who have shown or are likely to develop criminal tendencies, in order to have them trained to good habits and correct principles, except that the class of persons on whom the act of 1911 is to operate is enlarged.

ID.—POWER OF LEGISLATURE OVER SEX AND AGE AS RESPECTS "DEPENDENCY" AND "DELINQUENCY."—The legislature has power to make the provisions of the "juvenile court act" equally applicable to males and females "under the age of twenty-one years," and the sex or age of the person is a negligible quantity, under the act of 1911, in declaring what shall constitute "dependency" and "delinquency."

ID.—CONSTITUTIONALITY OF ACT IN RELATION TO TITLE—PRINCIPLE INVOLVED.—In considering the question of the constitutionality of the act of 1911, in relation to its title, the principles apply that before the courts will declare an act unconstitutional it must be made clearly apparent that it is violative of a constitutional provision, and inconsistent with it, and that if there is a reasonable doubt as to the validity of the act, its constitutionality must be upheld; and that the constitutional provision contained in section 24 of article IV of the constitution, regulating the titles of acts, is to receive a liberal construction, and is to be held violated only where the public is evidently entrapped by a misleading title. It is held that, applying these principles, the subject of the act of 1911 is sufficiently expressed in its title to meet the requirements of the constitution.

ID.—POWER OF LEGISLATURE TO REGULATE MINORITY.—The legislature has the power to regulate minority, and enact that any person, male or female, under twenty-one years of age is a minor; and it has the power, in accomplishing the beneficent objects of the act of 1911, to treat males and females of the same age alike; and it is held that there is no sound reason why a female, of equal age with a male, may not be declared a dependent and delinquent person under the juvenile court law, nor why it may not fix the limit of the age of both at twenty-one years.

ID.—SALARY OF JUVENILE COURT OFFICER—MANDAMUS.—There being no constitutional objection to the act of 1911, *mandamus* will lie to compel the payment by the county auditor of the salary of a probation officer legally appointed under the provisions of that act.

APPLICATION for writ of mandate directed against the county auditor of Sacramento County, to draw a warrant for the salary of a probation officer appointed under the juvenile court act of 1911.

The facts are stated in the opinion of the court.

W. H. Devlin, for Petitioner.

R. Platnauer, for Respondent.

CHIPMAN, P. J.—*Mandamus.* The petition shows that plaintiff is and at all times herein mentioned she was the duly appointed and acting assistant probation officer of the county of Sacramento, with a salary fixed by law at $100 per month, as provided by section 10f of the act of the legislature approved April 5, 1911 (Stats. 1911, p. 658); that, by reason of the provisions of said act, she was entitled to receive a warrant from defendant on the first day of July, 1912, for the sum of $100 for her services as such officer for and during the month of June, 1912; that the county of Sacramento is a county of the sixth class, as provided in said act; that defendant is the duly qualified and acting auditor of said county, and as such it is his duty, on the first of each month, to issue a warrant, drawn on the county treasurer of said county, to each person holding an office therein in payment of his or her salary as fixed by law; that on July 1, 1912, plaintiff demanded of defendant a warrant for said sum in payment of her said salary for June, but defendant refused to issue the same on the ground that said act is unconstitutional and furnishes no authority to comply with said demand; that there are funds in the treasury of said county available for the payment of said warrant to which plaintiff is entitled.

The constitutionality of the act referred to is raised by a general demurrer to the petition and is challenged on two grounds: First, The subject matter thereof is not expressed in its title, as required by section 24, article IV, of the constitution. Second. The act, in so far as it creates a class amenable to its provisions, namely, persons under the age of twenty-one years, is special legislation, and is in contravention of section 25 of article IV of the constitution. Third. It is also contended that the provisions of the act creating the office of assistant probation officer and fixing the salary of such office cannot stand, if the provisions relating to "delinquent and dependent persons" are unconstitutional.

1. The "juvenile court law," as it is designated by the act of 1911, is in all its essential features, and in respect of its

principal objects and purposes, substantially the same as the
act of 1909 (Stats. 1909, p. 213), of which it is a re-enactment,
except in this particular, namely, section 1 of the act of 1909
provides that it "shall apply to children under the age of
eighteen years," while section 1 of the act of 1911 provides
that the act "shall apply only to persons under the age of
twenty-one years." In section 1 of the act of 1909 it is pro-
vided that—"For the purposes of this act, the words 'de-
pendent child' shall mean any person under the age of
eighteen years" who is found doing certain enumerated acts
or who is in a certain defined condition, set forth in sixteen
different subdivisions of the section; and, by the same sec-
tion, it is provided that, "The words 'delinquent child' shall
include any person under the age of eighteen years" who
violates any law of the state or ordinance of any city, county
or town, defining crime. The act of 1911 contains some
amendments of the act of 1909, increasing the number of
assistant probation officers in some counties; changing the sal-
aries of officers; leaving some unchanged and adding some
counties to the list of counties classified in respect of the
number of officers and their salaries; but, in its general
scope, in its scheme and in the provisions of the various sec-
tions for the betterment of the class of persons sought to be
dealt with and to promote the general welfare, the act of
1911, in no essential respect which can in the slightest de-
gree affect its constitutionality, differs from that of 1909,
except in the one particular above pointed out. And in this
particular the only objection made is that the act embraces
females over eighteen years and under twenty-one years,
whereas the title of the act, as is claimed, refers only to
"minor children." The argument is that these terms must
necessarily mean minors as defined by the Civil Code, that
is, males under twenty-one and females under eighteen years
of age (Civ. Code, secs. 25, 27), and hence follows the viola-
tion insisted upon.

The title of the act of 1909 is repeated in the title of the
act of 1911, which latter is as follows:

"An act to amend an act entitled 'An act concerning de-
pendent and delinquent minor children, providing for their
care, custody and maintenance until twenty-one years of age;
providing for their commitment to the Whittier State School

and the Preston State School of Industry, and the manner of such commitment and release therefrom, establishing a probation committee and probation officers to deal with such children, and fixing the salaries of probation officers; providing for detention homes for said children; providing for the punishment of persons responsible for, or contributing to, the dependency or delinquency of children; and giving to the superior court jurisdiction of such offenses, and repealing inconsistent acts,' approved March 8, 1909.''

The act of 1909 has been before the appellate courts of the state in the following cases: *Nicholl* v. *Koster,* 157 Cal. 416, [108 Cal. 302]; *In re Sing,* 13 Cal. App. 736, [110 Pac. 693]; *In re Sing,* 14 Cal. App. 512, [112 Pac. 582]; *In re Maginnis,* 162 Cal. 200, [121 Pac. 723]. The principal question now presented, however, did not arise in any case, so far as we have discovered. But the purposes and objects aimed at by the act were before the courts and were clearly stated. These juvenile courts, which are in fact but an extension of the jurisdiction of the superior courts, are the creation of modern philanthropic endeavor, and are designed to and in fact do provide a most excellent means of restraining and reforming wayward persons who, unchecked, may become a menace to society. Mr. Justice Shaw, in *Nicholl* v. *Koster,* 157 Cal. 416, [110 Pac. 693], said: ''The main purpose of the act is to provide for the care and custody of children who have shown, or who from lack of care are likely to develop, criminal tendencies, in order to have them trained to good habits and correct principles. To accomplish this it gives additional jurisdiction and power to the superior courts of the state and provides officers necessary for the execution of that jurisdiction and power. It is an exercise of the police power of the state, through the judicial department. It is a matter which concerns the whole state as much as any other exercise of the judicial system. These have been held to be matters of state policy.'' All this is equally true of the act of 1911 in so far as it applies to males under the age of twenty-one years, and in so far also as it applies to females under the age of eighteen, for they are minors, as above defined, and it is conceded that if the act of 1911 had been limited to the sexes of these ages respectively, the act would have been valid. Putting aside for the moment the statutory definition of minority, we do

not doubt the power of the legislature, as we shall endeavor to show further along, to make the provisions found in this act equally applicable to males and females under the age of twenty-one years, for when we come to consider what the act declares shall constitute ''dependency'' and ''delinquency,'' it will be seen that the sex of the person, or, for that matter, the age, is a negligible quantity. Briefly, as appears by section 1, in case of a ''dependent person,'' he is any person (1–2) found begging; (3) or is a vagrant; (4) or is found wandering without any settled abode or any proper guardianship; (5) or who has no parent or guardian, or none capable or willing to exercise parental control; (6) or who is destitute; (7) or whose home, by reason of neglect, cruelty or depravity of his parents or guardian, or person having care of him, is an unfit place; (8) or who frequents the company of reputed criminals, vagrants, or prostitutes; (9) or who is found living in a house of prostitution; (10) or who visits, habitually, saloons without parent or guardian; (11) or who persistently refuses to obey the reasonable orders of parents or guardian; (12) or who is incorrigible, that is, beyond the control of parent or guardian by reason of the vicious conduct or nature of such person; (13) or whose father is dead or has abandoned his family or is a habitual drunkard or such person is destitute and without a suitable home or means of making an honest living, or is in danger of leading a dissolute and immoral life; (14) or is an habitual truant, within the meaning of a certain designated law; (15) or who habitually uses intoxicating liquor as a beverage, or habitually smokes cigarettes or habitually uses opium, cocaine, morphine or other drug without the direction of a physician; (16) or who from any cause is in danger of growing up to lead an idle, dissolute or immoral life.

In the case of a ''delinquent person,'' he is anyone who violates any law of the state, or ordinance of any city, town or county defining crime. These provisions of the law are mentioned at this point to show that sex has little to do with the purpose of the act and that they are equally applicable to males and females of like age.

It seems to us that the general aim and purpose of the legislation must be kept in view when we approach the precise question, now under discussion, on which the defendant re-

lies. It is important to remember that this aim and purpose were the same in both acts, with the single exception that the class of persons on whom the law was to operate was slightly enlarged.

Section 24, article IV of the constitution, is as follows: "Every act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act which shall not be referred to in its title, such act shall be void only as to so much thereof as shall not be expressed in its title." Before the courts will declare an act unconstitutional it must be made clearly apparent that the act is violative of some provision of the constitution and inconsistent with it. If there is a reasonable doubt as to the validity of the act its constitutionality must be upheld. (*Deyoe* v. *Superior Court,* 140 Cal. 476, [98 Am. St. Rep. 73, 74 Pac. 28].) This provision of the constitution has had frequent examination by our supreme court. In the recent case, *In re Maginnis,* 162 Cal. 200; [121 Pac. 723], Mr. Justice Shaw quoted from *Abeel* v. *Clark,* 84 Cal. 226, [24 Pac. 383], as follows: "The constitutional provisions with respect to titles of acts were designed mainly to prevent legislatures and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title to another."

The importance of the question justifies our referring to its more elaborate treatment in *Ex parte Liddell,* 93 Cal. 633, [29 Pac. 251]. The act in that case was entitled: "An act to establish a state reform school for juvenile offenders, and to make appropriation therefor." We quote:

"The object of the provision is to prevent legislative abuse —to prevent the passage of acts bearing deceitful and misleading titles. It is intended to protect the members of the legislature, as well as the public, against fraud; to guard against the passage of bills the titles of which give no intimation to the members of the legislature or to the people of the matters contained therein. . . .

"In *Abeel* v. *Clark,* 84 Cal. 229, [24 Pac. 383], we held it was not necessary that the title of the act should embrace an abstract of its contents; the cases cited therein show that such is the view taken by the courts of other states; and on reflection, it must appear that this conclusion is based upon

the soundest principles of constitutional construction. It certainly was not intended that the title should be a repetition of the provisions found in the body of the bill; the object was to prevent deception by the inclusion of matters incongruous with the subject specified in the title. If the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain. It has always been the custom to state the subject of a bill in general terms and with the fewest words, and the framers of the constitution doubtless intended the legislature to conform to that custom. (Citing cases.) Numerous provisions having one general object fairly indicated by the title may be united. When the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents. . . .

"The title of the act clearly shows what the legislature intended to accomplish, and the provisions referred to simply conduce to that object; they are auxiliary to and promotive of the main purpose of the act, and have a 'necessary and natural connection' therewith. They are germane to the subject stated in the title of the act; there is no attempt to conceal the purpose or scope of the act; and no attempt in the act itself to blend diverse and independent subjects.

"It is admitted that the constitutional provision under consideration has always been given a liberal construction; and this must be so, because the constitution itself does not define the degree of particularity with which a title shall specify the subject of a bill. The matter must therefore be left largely to legislative discretion. (Citing authorities.)

"While it is the duty of the court to place such a construction upon this constitutional provision as will prevent mischievous and vicious legislation, we should guard against such a rigorous interpretation of the language as will impale upon its sharp points the good with the bad."

Mr. Black says: "It is sufficient if the title is comprehensive enough to reasonably include, as falling within the general subject, and as subordinate branches thereof, the several objects which the statute assumes to effect." Again: "But the courts, in dealing with a question of this kind, will not be solicitous to overthrow the statute. On the contrary, they will give the legislature the benefit of every doubt, and will

endeavor to so read the title and the act as to make the one adequate to express the subject of the other. . . . Hypercriticism is utterly out of place, the only requirement being that the title of the statute shall express its object in a general way, so as to be intelligible to the ordinary reader.'' (Citing cases, Black on Constitutional Law, p. 329.)

With these rules as a guide, let us look at the title and the body of the act, for both are to be consulted.

The stress of defendant's argument is placed upon the use of the words ''minor children,'' and the fact that only children ''under the age of eighteen'' are dealt with in the act of 1909, i. e., minors. But the title expressly states that the act concerns ''dependent and delinquent minor children, providing for their care, custody and maintenance until twenty-one years of age,'' and section 20 of both acts provides that the court ''shall retain the jurisdiction of any person who is found delinquent until such person attains majority, *or if a girl, until she attains the age of twenty-one years,* unless she is married with the consent of the court, or until said court is satisfied that said person has fully reformed and that further direction and supervision under this act are unnecessary for said person's reformation.'' Similar provision is found in the act creating the Whittier State School. (Act of March 11, 1889, [Stats. 1889, p. 111], and amendatory acts; Amendment April 19, 1909, secs. 16, 16a, [Stats. 1909, p. 988].) The act of 1909 clearly contemplated that when the court had once obtained jurisdiction of a female it could retain that jurisdiction beyond the period of minority, for, as we have endeavored to show, the chief object of dealing with delinquents was reformation. If jurisdiction could be thus retained of a female beyond the period of minority we can see no reason why, under the same title, the legislature might not in the first instance give the court jurisdiction and extend it beyond the period of minority. The act shows by its title that it had for its subject the conferring upon the superior court new and important jurisdiction over new and important matters, to wit, the power to commit persons to certain reformatory institutions then in existence—the Whittier State School and the Preston State School of Industry; providing for detention homes for persons; establishing a probation committee and probation officers to deal with the

persons affected by the act. It is true that the title mentioned dependent and delinquent minor children as one of the subjects of the act, but even this did not include all minor males, for the act of 1909 applied only to persons under the age of eighteen years. We cannot see how members of the legislature or ordinary readers could justify a claim that they were misled or hoodwinked into the belief that the title concerned only minors as defined by the code and, relying on this supposed fact, looked no further and offered no opposition. The title gave warning that these subjects of the act— minor children—including females, were to be cared for, taken into custody and maintained until twenty-one years of age. Thus the title was specific enough to notify all persons that it was proposed to exercise some sort of supervision over females until twenty-one years of age. But the title also embraced other important subjects which challenged notice and forbade the legislator from withholding his attention on the bare assumption that the proposed act related only to minors as defined by the code and hence need not interest him. The title to an act is no essential part of the act and but for the constitutional provision would not be necessary at all. The constitution makes it necessary to give the act a title, and it is for the purpose above shown. We are not to exalt the title to a dignity and importance beyond its purpose reasonably regarded. We are not permitted to select a single word in the title and ignore the remaining subjects in order to build up a theory on which to declare the act void; but we must look at the entire title to discover whether the legislature or the public were entrapped by its misleading language and were thus led to permit legislation to pass unchallenged which was incongruous with the subjects specified in the title. We think it may be safely said of the provisions of the act in question as was said of the state reform school act, in *Ex parte Liddell,* 93 Cal. 633, [29 Pac. 251] : "The title of the act clearly shows what the legislature intended to accomplish, and the provisions referred to simply conduce to that object. They are auxiliary to and promotive of the main purpose of the act, and have a 'necessary and natural connection' therewith. They are germane to the subject stated in the title of the act; there is no attempt to conceal the purpose or scope of the act, and no attempt in the act

19 Cal. App.—39

itself to blend diverse and independent subjects.'' Plaintiff suggests that the word "minors,'' as used in the title, may be rejected as surplusage. This we are not permitted to do; but we are permitted to regard it in its relation to the other subjects of the title and to the general purpose and scope of the act, in order to determine whether it was misleading to such extent as to render the entire act void. We are authorized "to so read the title and the act as to make the one adequate to express the subject of the other,'' and to see whether "the title of the statute shall express its object in a general way, so as to be intelligible to the ordinary reader.'' (Black on Constitutional Law, *supra.*) Defendant, on the other hand, would read the title of an act of the legislature as though it were a contract to be strictly construed, regardless of the rules of construction applicable in ascertaining the force which must be given to this provision of the constitution, and regardless of the purpose which commentators and the courts have uniformly held to be the object to be attained by it. We think the subject of the act is sufficiently expressed in its title to meet the requirements of the constitution.

2. The objection that such a law is violative of section 25, article IV of the constitution, as special legislation, is based on the assumption that there is no natural or intrinsic or constitutional distinction justifying such a classification. It is admitted that a classification based on the age of minority of the sexes would not violate the constitution, as has been held, at least inferentially, in sustaining the act of 1909. But it cannot be doubted that the legislature may enact that any person, male or female, under the age of twenty-one years, is a minor, and if such were the law it is conceded that this act could stand. It is illogical, therefore, to say that the legislature can deal with a person as a delinquent or dependent who has been declared by the legislature to be a minor of the age of twenty-one years, but cannot deal with a person of that age as a dependent or delinquent who has not been declared to be a minor. Such a position is wholly untenable for the reason that whether the person is or is not a legally declared minor is beside the question. The natural or intrinsic distinction which must characterize the classification in the case here is doubtless much the same as exists as the basis for classifying persons as minors. This distinction, the

legislature has said, and its constitutionality is not doubted, exists as to females at the age of eighteen and as to males at the age of twenty-one. It is not necessary to explore the reason for this distinction or the reason for the difference in ° age between the sexes. Suffice it to say that there is not, physiologically or otherwise, a difference which would forbid our holding that a female may be dealt with as a dependent or delinquent under the age of twenty-one equally with a male. The road to ruin is as accessible to a female under the age of twenty-one as it is to a male. To accomplish the beneficent objects of the law the state may properly reach out its saving hand to rescue males and females alike who are on the downward path. No sound reason can be suggested why the state may not do this to save a female under the age of twenty-one if it may do so to rescue and save a male of that age. There is no sound reason why a female of equal age with the male may not be declared to be a ''delinquent'' for violating a state law defining crime. A female at the age of nineteen or twenty years cannot be said to differ much from the day she was eighteen, and at eighteen, she is about the same as she was the day before. It cannot be said that the legislature, in fixing the maximum age at twenty-one at which it would deal with persons for ''dependency'' or ''delinquency,'' was acting any more arbitrarily than in fixing the limit at eighteen. The period of majority for both male and female is a matter within the legislative discretion to determine. We can see no reason why the legislature may not classify persons by their age for the purpose of dealing with them as dependent or delinquent persons within the provisions of a regulatory statute such as the juvenile court law.

The legislature has placed the age of consent by the female at sixteen years; she becomes an adult at eighteen; she cannot vote until she is twenty-one. She may become a party to the violation of her chastity at sixteen and the sharer in her undoing escape punishment for what would have been a crime the day before she had reached that age; she may enter into contract at eighteen, but she cannot, by her vote, aid in making laws or in selecting officers to administer them until she is twenty-one years of age. It is idle to speculate as to the reasons for these distinctions; they are made and the power

to make them is no longer disputed. It would be equally idle to speculate as to the reason impelling the legislature to place delinquent and dependent females on the same footing with males and fixing the limit of age of both at twenty-one years.

Counsel for defendant has ably presented his points, and it must be admitted that his view has much force. We think, however, that it rests upon a too technical application of the rules of construction and overlooks the broader interpretation of those rules which should be resorted to in upholding laws admittedly of great public importance.

Inasmuch as we find no ground for holding the law to be unconstitutional, it becomes unnecessary to consider defendant's third point. Clearly, the legislature had the power to provide all the officers necessary for the due execution of the law. (*Ex parte Liddell,* 93 Cal. 633, [29 Pac. 351]; *Nicholl* v. *Koster,* 157 Cal. 416, [108 Pac. 302].)

Let the writ issue.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 4, 1912.