[Civ. No. 5955. First Appellate District, Division Two.—November 3, 1927.]

THE PEOPLE, Respondent, v. STERLING REFINING CO. (a Corporation), Appellant.

H. M. Anthony for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

PRESTON (H. L.), J., *pro tem.*—The attorney-general, at the request of the state controller, commenced this action in the name of the People of the State of California, in the superior court of Los Angeles County, against defendant and appellant, Sterling Refining Company, a corporation, to collect from it the sum of $6,184.69, together with interest thereon at the rate of seven per cent per annum from May 10, 1924, claimed to be due to the state of California as

license taxes on certain motor vehicle fuel under what is known as the "Motor Vehicle Fuel Act of 1923" (Stats. 1923, p. 571).

The case was tried by the court sitting without a jury, and judgment was rendered in favor of plaintiff for the full amount claimed. From this judgment defendant prosecutes this appeal, based upon the judgment-roll alone.

The complaint alleges and the court found:

"II.

"That during the quarter of the year beginning January 1, 1924, and ending March 31, 1924, said defendant refined, manufactured, produced and compounded in said state, and sold and delivered therein 616,269 gallons of motor vehicle fuel. . . . That in the refining, manufacture, production and compounding of said 616,269 gallons of motor vehicle fuel, the defendant used kerosene to the extent of fifty per cent. That all of said 616,269 gallons of motor vehicle fuel were sold by defendant for use in and for the purpose of operating and propelling motor vehicles upon the highways in California.

"III.

"That thereafter on the 11th day of April, 1924, said defendant filed with the State Board of Equalization of said state on a form prescribed by said State Board a verified statement and report showing the total number of gallons of motor vehicle fuel refined, manufactured, produced and compounded by it within said state and sold by it therein during the quarter of the year ending March 31, 1924, and in said statement the number of said gallons was stated to be 616,269; that thereupon said State Board computed the license tax due, or to become due, from said defendant because of such sales so made by it and found to be due upon said statement and report the sum of $12,325.38, and from said amount so computed and found to be due there was allowed as a deduction the sum of $123.25, the same being one per cent of said sum of $12,325.38, and the balance due from said defendant upon and by reason of said tax after allowing said deduction was the sum of $12,202.13; that thereupon said Board of Equalization extended said sum of $12,202.13, upon a tax roll prepared and kept for the purpose, and thereafter and on or before the 30th day of April, 1924, delivered said tax roll to the

State Controller of said State, and said State Controller did within ten days thereafter notify said defendant that said license tax in said sum was due from it and payable to the State Controller on or before May 10, 1924.

"IV.

"That said sum of $12,202.13 so due to said State from said defendant as and for said license tax has not, nor has any part, been paid to said State or to said State Controller, except the sum of $6,017.44, and there is now due, owing and unpaid the sum of $6,184.69."

The answer of the defendant admits that it did, on the eleventh day of April, 1924, file with the state board of equalization a verified statement and report showing that during the quarter ending March 31, 1924, it had produced 616,269 gallons of motor vehicle fuel.

A number of points are urged by appellant in its attack upon the judgment, and these contentions will be considered in the order in which they appear in appellant's brief.

The first contention is that the Motor Vehicle Fuel or License Act of 1923 (Stats. 1923, p. 571), under which this action is brought, never went into effect on September 30, 1923, as provided in section 17 of the act, nor has it since gone into effect.

Section 17 of said act provides: "This act shall go into effect upon the thirtieth day of September, one thousand nine hundred twenty-three, provided there shall have been theretofore enacted that certain act known and cited as the 'California Vehicle Act,' introduced in the forty-fifth session of the legislature as Senate Bill No. 743."

■ Section 1875 of the Code of Civil Procedure provides in part:

"Courts take judicial knowledge of the following facts:

"3. Public and private acts of the legislature . . . "

■ Under this statute, we have a right to examine into the legislative history of these two acts, and upon such examination we find that the "California Vehicle Act" was introduced in the forty-fifth session of the legislature of 1923, and designated Senate Bill No. 743. The "Motor Vehicle Fuel Act" was introduced at the same session and designated Senate Bill No. 744. Each bill was introduced, according to the final official calendar of legislative business, on May 4, 1923. The original draft of each bill was amended during

its consideration. Senate Bill No. 743 was passed by the assembly on May 16th, and by the Senate, after a free conference, on May 18th, and was approved by the Governor on May 30th, and, upon being filed with the Secretary of State, was designated as chapter No. 266. Senate Bill No. 744 was passed by the assembly on May 16th and by the Senate on May 17th, and was also signed by the Governor on May 30th, and upon being filed with the Secretary of State was designated chapter 267.

From the history of the two bills, the appellant argues that Senate Bill No. 743, as finally enacted, differed from Senate Bill No. 743 as originally introduced, and from this concludes that the ''Motor Vehicle Fuel Act'' did not go into effect at all. There is no merit in this contention. If the legislature had intended that the ''Motor Vehicle Fuel Act'' should not be effective until Senate Bill No. 743 had been enacted into a law *in the precise form as originally introduced,* it would have been a very easy matter for it to have so declared. What the legislature undoubtedly intended, as plainly expressed in section 17, above set forth, was that the ''Motor Vehicle Fuel Act'' should go into effect on September 30, 1923, only in the event that prior to that date the ''California Vehicle Act'' *had been enacted into a law.* It is common knowledge that almost every bill introduced in the legislature is amended, modified, or changed in some particular before it becomes a law, and it would be unreasonable to assume that the legislature only intended that the ''Motor Vehicle Fuel Act'' should go into effect on September 30, 1923, in the event that prior thereto Senate Bill No. 743 had been enacted into a law *in the precise language as originally introduced.* By designating it Senate Bill No. 743, in addition to stating that it was the ''California Vehicle Act,'' was only another means of identification.

Another sufficient answer to this contention of appellant's is that statutes *speak from the date of . enactment* and not from the date of introduction in the legislature. Both acts were approved by the Governor on May 30, 1923, so when the legislature spoke in section 17 of the Motor Vehicle Fuel Act about the passage of the ''California Vehicle Act,'' designated as Senate Bill No. 743, it un-

doubtedly referred to the "California Vehicle Act," in the form signed by the Governor on May 30, 1923.

It is next contended by appellant that said "Motor Vehicle Fuel Act" violates section 24 of article IV of the state constitution.

Section 24 of article IV of the constitution provides: "Every Act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title."

In speaking of this constitutional provision, the supreme court in *Ex parte Liddell*, 93 Cal. 633 [29 Pac. 251], said: "The object of the provision is to prevent legislative abuse,— to prevent the passage of acts bearing deceitful and misleading titles. It is intended to protect the members of the legislature, as well as the public, against fraud; to guard against the passage of bills, the titles of which give no intimation to the members of the legislature or to the people of the matters contained therein." To the same effect, see, also, Cooley's Constitutional Limitations, 6th ed., 169; *Abeel* v. *Clark,* 84 Cal. 228 [24 Pac. 383]; *People* v. *Jordan,* 172 Cal. 394 [156 Pac. 451]; *Moore* v. *Williams,* 19 Cal. App. 600 [127 Pac. 509]; *In re Maginnis,* 162 Cal. 200 [121 Pac. 723].

The rule is well established that before courts will declare an act unconstitutional, it must be made clearly apparent that the act is violative of some provision of the constitution and inconsistent with it. If there is a reasonable doubt as to the validity of the act, its constitutionality must be upheld. (*Deyoe* v. *Superior Court,* 140 Cal. 476 [98 Am. St. Rep. 73, 74 Pac. 28]; *Moore* v. *Williams, supra;* Black on Constitutional Law, p. 329.)

It is also well settled that this constitutional provision (sec. 24 of art. IV), requiring the subject of the act to be expressed in the title, must be liberally construed, and that all that is required to be contained therein in order to meet the constitutional requirements is a reasonably intelligent reference to the subject to which the legislation is to be addressed. (*Estate of Wellings,* 192 Cal. 506 [221 Pac. 628]; *McClure* v. *Riley,* 198 Cal. 23 [243 Pac. 429], and cases there cited; *Bassford* v. *Earl,* 172 Cal. 660 [158 Pac. 124];

*Estate of Elliott,* 165 Cal. 339 [132 Pac. 439]; *People* v. *Jordan, supra; Abeel* v. *Clark, supra; Ex parte Liddell, supra.)*

The law is also well established that it is not necessary that the title of an act should embrace an abstract of its contents. It has always been the custom to state the subject of the bill in general terms with the fewest words, and the framers of the constitution doubtless intended the legislature to conform to that custom. Numerous provisions having a general object fairly indicated by the title may be united. When the general purpose is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents. (*Abeel* v. *Clark, supra; Moore* v. *Williams, supra.*)

The act is entitled "An act to regulate and license the business of producing, refining or distributing gasoline, distillate and other motor vehicle fuels, providing for the collection and disposition of license taxes, prescribing penalties for violation of the provisions of said act, and repealing all acts and parts of acts inconsistent herewith." A careful examination of the act itself convinces us that the subject matter embraced within the body of the legislative act is sufficiently referred to in the title to fully meet all requirements of section 24 of article IV of the constitution.

Appellant lays particular stress upon the fact that the title of the act does not say that the act shall take effect on September 30, 1923. No such requirement is found in the constitution; it only requires that the title express the subject of the act, etc., and, as we have seen, the purpose of the constitutional provision is to prevent legislators and the public from being entrapped by misleading titles to bills, whereby legislation relating to one subject might be obtained under the title to another. The people are presumed to know when a law goes into effect. When a law goes into effect is no part of the act itself and it is never the custom of the legislature to place in the title the date when the act goes into effect. Hundreds of legislative enactments may be examined without the discovery of a single one in which the operative date is expressly mentioned in the title.

Appellant next contends that the provisions of section 17 of said "Motor Vehicle Fuel Act" invalidates the whole act. There is no merit whatever in this contention.

If it be conceded, for the sake of argument, that section 17 of said act is invalid, it does not affect the balance of the act, because section 15 of said act provides: "If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act and each section, subsection, sentence, clause and phrase thereof irrespective of the fact that any one or more of the sections, subsections, sentences, clauses or phrases be declared unconstitutional."

This section clearly shows that it was the intention of the legislature that, even if section 17 be adjudged invalid, nevertheless, the balance of the act should become effective ninety days after adjournment of the legislature, as provided in section 1 of article IV of the constitution.

It is a familiar and cardinal rule of statutory construction that if the different parts of a statute are severable and independent of each other, and the provisions that are within the constitutional power of the legislature are capable of being carried into effect after the void part has been eliminated, and it is clear from the statute itself that it was the intention of the legislature to enact these provisions irrespective of the others, the unconstitutional provision or provisions will be disregarded, and the statute read as if the void provisions were not there. (*Hale* v. *McGettigan,* 114 Cal. 112 [45 Pac. 1049]; *People* v. *Capelli,* 55 Cal. App. 468 [203 Pac. 837]; *Bacon Service Corp.* v. *Huss,* 199 Cal. 21 [248 Pac. 235].)

A reading of the entire statute (Stats. 1923, p. 571) itself convinces us that section 17 is entirely independent of the other provisions of the act, and can be eliminated without impairing or rendering incomplete the other provisions of the act. Section 15 of the act above quoted affords indisputable evidence that the legislature intended that said statute should become operative, notwithstanding that section 17 thereof be declared void.

The precise language used in section 15 above quoted was used by the legislature in what is known as the "Motor Transportation License Act" (Stats. 1923, p. 706), and the supreme court in *Bacon Service Corp.* v. *Huss, supra,* in passing upon the constitutionality of that act, held that.

such language as used in section 15 of said Motor Vehicle Fuel Act was *indisputable evidence of the intention of the legislature to pass the act, irrespective of any void provisions thereof.*

Appellant contends that the legislature, by the enactment of section 17, is attempting to transfer to others the responsibility of deciding what legislation is expedient and proper. It is a well-settled rule, of course, that the legislature cannot transfer to others the responsibility of deciding what legislation is expedient and proper, with reference to either present conditions or future contingencies. (*In re Wall*, 48 Cal. 313 [17 Am. Rep. 425].) However, no such situation is created in the enactment of said Motor Vehicle Fuel Act. The legislature had the power to prescribe that the act would go into effect on September 30, 1923, which was subsequent to the date when legislative enactments ordinarily become effective under section 323 of the Political Code and section 1, article IV, of the state constitution, and it also had the power to declare that acts should then become effective only if prior thereto a certain statute had been enacted by the same law-making body.

Section 17 does not refer to an uncertain condition, but to a definite and certain event; namely, the adoption of the "California Vehicle Act" before September 30, 1923. The entire matter remained in the hands of the same law-making body; nothing was left to the judgment or discretion of any other person or party and no question of the expediency of the law was left to the judgment of any other person, and the legislature exercised its own judgment definitely and finally.

It is next contended by appellant that the superior court of the state of California, in and for the county of Los Angeles, had no jurisdiction of this action. In support of this contention appellant relies upon section 433 of the Political Code, which provides:

"Duties of Controller.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"16. To direct and superintend the collection of all moneys due the state, and institute suit in its name for all official delinquencies in relation to the assessment, collection, and payment of the revenue, and against persons who by any means have become possessed of public money or property

and fail to pay over or deliver the same, and against all debtors of the state; of which suits the courts of Sacramento County have jurisdiction, without regard to the residence of the defendants.''

This section does not purport to give *exclusive jurisdiction* to the superior court in and for Sacramento County of all suits filed by the state controller to collect money due the state. This section merely makes an exception to the general rule, fixing venue of actions.

Another complete answer to this contention of appellant's is found in the fact that the record fails to show any objection made by appellant to the jurisdiction of the superior court of Los Angeles County, and fails to show any demand for a change of venue. For this reason alone appellant has waived any right it may have had to complain of the jurisdiction of the superior court of Los Angeles County. (Secs. 396, 397, Code Civ. Proc.; *Bohn* v. *Bohn,* 164 Cal. 532 [129 Pac. 981]; *Smalley* v. *George C. Peckham Co.,* 175 Cal. 146 [165 Pac. 438]; 25 Cal. Jur., pp. 889, 890, and cases there cited.)

It may also be noted in this connection that section 9 of said Motor Vehicle Fuel Act, which became a law long after section 433 of the Political Code was enacted, provides: ''Upon the request of the state controller, it shall be the duty of the attorney general to commence and prosecute to final determination *in any court of competent jurisdiction an action at law to collect any tax herein imposed which is delinquent and all penalties and interest accrued.''*

There is no conflict between section 433 of the Political Code and section 9 of said Motor Vehicle Fuel Act, and the superior court of Los Angeles County was a court of competent jurisdiction to hear and determine this action.

Appellant next contends that the kerosene contained in the motor vehicle fuel which it manufactured and sold is not subject to the license tax. This contention is based upon the finding above set forth.

Section 1, subdivision (b), of said act, is as follows: '' 'Motor vehicle fuel' shall include all gasoline, distillate, benzine, naphtha, liberty fuel and other volatile and inflammable liquids produced or compounded for the purpose of, or which may be used in, operating or propelling motor vehicles except kerosene and except unfinished products re-

quiring rerun, blending, or compounding and which are not used or sold for use in such form for the purpose of operating or propelling motor vehicles.''

If appellant's so-called ''gasoline'' was, in fact, one-half kerosene, nevertheless, such a mixture would certainly constitute ''a volatile and inflammable liquid,'' and, it having been sold by appellant to be used in operating automobiles upon the public highways of California, as found by the trial court, was subject to the license tax. When appellant sold this mixture to the public to operate motor vehicles with, no representation was made that it contained one-half kerosene, but when called upon to pay the license taxes thereon, appellant claims for the first time that it was one-half kerosene. Certainly, no court would lend itself to assist appellant to avoid the payment of the license taxes under such a pretense. Moreover, the answer of appellant admits that during the quarter ending March 31, 1924, it refined, manufactured, produced, and compounded 616,269 gallons of motor vehicle fuel, and made a verified return to the board of equalization as required by section 6 of said act, and there is nothing in the record showing that appellant *claimed that fifty per cent of the 616,269 gallons was exempt from taxation* when it made and filed said verified report to the board of equalization, and no such claim was made until this action was commenced. For this reason alone no such claim can now be made. When appellant prepared its report, as provided in section 6, then was the time for it to claim any exemptions that it might have. There is nothing in the law to authorize the board of equalization to make any deduction which is not claimed by the applicant.

We are fully satisfied that there is no merit in the appeal, and for that reason the judgment should be, and it is, affirmed.

Koford, P. J., and Sturtevant, J., concurred.